■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRUCE VAN BUREN, Appellant. — Appeal from a judgment of the County Court of Montgomery County (White, J.), rendered September 8, 1980, convicting defendant upon his plea of guilty of the crime of robbery in the third degree. At the conclusion of a hearing seeking to suppress certain evidence seized at the time of defendant's arrest as well as the identification made of defendant subsequent thereto, a negotiated plea of guilty to a reduced charge of robbery in the third degree was entered on July 8, 1980. On September 8, 1980, defendant received an indeterminate sentence with a maximum of five years and no fixed minimum. On this appeal, defendant attacks the legality of his sentence, the reliability and validity of the identification procedure employed by the police, and the warrantless arrest and seizure of evidence at his place of abode. Initially, we agree that the sentence imposed was in violation of the statutory provisions then in effect (Penal Law, § 70.00, subd 3, par [b], eff Sept. 1, 1980). The recent change required the court to set a minimum sentence of not less than one year nor more than one third of the maximum imposed for nonviolent felony convictions. The statute in effect at the time of sentencing is controlling, not the provisions in effect at the time of the entry of the plea of guilty, as suggested by the People. However, this issue is academic since both parties have agreed that in the event of an affirmance, defendant may be resentenced to a term with a minimum of one year and a maximum of five years. As to the identification procedures employed, we find that, considering the totality of the circumstances, they were not so unnecessarily and impermissibly suggestive that they amount to a denial of due process (see *People v Gonzalez,* 61 AD2d 666, affd 46 NY2d 1011). The victim of the robbery, Ms. Moskal, obtained a close view of defendant while he was in her liquor store prior to the time he placed the knife at her throat in the course of the robbery. She gave the police a detailed and accurate description of defendant and the clothes he was wearing, which were the exact type of clothes found on the floor by defendant's bed at the time of his arrest. She positively identified defendant in a book of mug shots at the police station shortly after the commission of the crime. Moreover, she again selected defendant from a photographic lineup which included defendant and nine others of similar features and appearance. While a subsequent "showup" of defendant and an identification of defendant through a one-way mirror would seem to be improper (*People v Rahming,* 26 NY2d 411, 416), the photographs in evidence, and the record as a whole, provide ample basis for the trial court's conclusion that the identification of defendant possessed an independent source and was not tainted by any suggestive police procedures, even in the absence of Ms. Moskal's testimony at

the *Wade* hearing (see *People v Graham,* 67 AD2d 172).* The logic of this conclusion finds further support in the fact that should Ms. Moskal be unable to identify defendant at a subsequent trial, these same police officers would be able to testify to her prior identification and such testimony would be evidence in chief on the identification issues (CPL 60.25, 60.30). Finally, we believe that on the facts presented, there was probable cause for defendant's arrest without a warrant. The robbery at Ms. Moskal's liquor store occurred at approximately 9:00 P.M. on New Year's Eve, 1979, in the City of Amsterdam. When the police arrived, Ms. Moskal gave them a detailed description of the robber, described how he looked around the store, spoke to her, and then put a knife to her throat threatening to kill her if she did not give him money. She further advised them that as the robber fled, an unidentified male entered the store and observed the direction in which the assailant was running. Armed with this information, an investigating officer, who was familiar with defendant, concluded the description matched that of defendant. Police then arrived at the apartment where defendant was known to reside. A knock on the front door was answered by one Anne Marie Dawson, who stated she lived there, permitted the officers to enter the apartment upon their request, and further responded that defendant resided in the apartment. Further inquiry determined defendant was sleeping upstairs and when the officers requested permission to go upstairs and speak with defendant, Ms. Dawson stated they could, and pointed up the stairs. Defendant was observed through an open bedroom door at the top of the stairs in bed beneath the sheets. He responded to the call of his name and agreed to go downstairs with the officers. While the police were in his room, they noticed a pair of white pants with grease stains and a blue hooded sweatshirt on the floor next to the bed. Defendant was fully clothed, but the shirt and pants on the floor matched the exact description of the clothes worn by the robber as given by Ms. Moskal. They asked defendant if they could take that clothing, and he consented. He was taken out into the street, given his *Miranda* rights and removed to an interview room at police headquarters. There were no statements taken from him, oral or written. These facts are similar to those presented in *People v Ponder* (54 NY2d 160), where the Court of Appeals found probable cause for a warrantless arrest. However, as in *Ponder,* there is before us the further issue of the warrantless entry. This, in turn, requires consideration of whether this defendant should be afforded "standing" to contest the validity of the warrantless entry into premises leased by Ms. Dawson. To be entitled to such "standing", it is incumbent upon defendant to demonstrate that the circumstances of his presence establish a reasonable expectation of privacy as an occupier of a room at Ms. Dawson's apartment (see *People v Ponder,* 54 NY2d 160, 166, *supra*). This he has failed to do. He had been there approximately six weeks, paid no rent, and contributed nothing toward the cost of food or other services, save a limited number of food stamps provided by the Department of Social Services. In short, he was a mere transient. Accordingly, we find nothing to trigger any Fourth Amendment rights or constitute a violation thereof, since this defendant was not possessed with any legitimate expectation of privacy in the premises of another (see *United States v Salvucci,* 448 US 83; *Rakas v Illinois,* 439 US 128). Judgment modified, on the law, by reversing the sentence imposed, and, as so modified, affirmed; matter remitted to the County Court of Montgomery County for resentencing in accordance herewith. Kane, J. P., Mikoll and Weiss, JJ., concur.

Main and Yesawich, Jr., JJ., concur in the following memorandum by Yesawich, Jr., J. Yesawich, Jr., J. (concurring). Although reliance on *People v*

---

* Additionally, we note that a written statement given by Ms. Moskal to the police describing these identification procedures was received in evidence at the suppression hearing without objection.

*Ponder* (54 NY2d 160) appears to us misplaced, as the facts there were markedly different, our paramount disagreement is with the majority's conclusion that defendant lacked "standing" to challenge the warrantless entry into his bedroom. We are of a contrary mind for there is evidence suggesting that in these commonly shared premises defendant had carved out for himself an enclave, a bedroom he alone occupied and over which he had exclusive control, where he could reasonably expect to be secure against invasions of his privacy (cf. *People v Cosme,* 48 NY2d 286, 293, n 2; see *People v Wood,* 31 NY2d 975). Because the evidence on this issue is open to different interpretations, we prefer to rest our affirmance on the principle that the suppression court's finding that Ms. Dawson, one of the three co-occupants, had authority to invite the officers into defendant's bedroom, must be honored, since it cannot be said that this finding is factually insupportable.