THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CURTIS TINDAL, Respondent.

Fourth Department, July 13, 1979

APPEARANCES OF COUNSEL

*Lawrence T. Kurlander (Melvin Bressler* of counsel), for appellant.

*Robert M. Hardies* for respondent.

## OPINION OF THE COURT

SIMONS, J.

The issue in this rape case is the extent to which the exclusionary rule forecloses the use of evidence otherwise lawfully acquired by the police but obtained by them after defendant had been identified by the victim in an improper identification procedure. The hearing court believed the improper identification procedures tainted the after-acquired evidence and suppressed not only the victim's identification of defendant but also defendant's subsequent admissions and the physical evidence obtained from him, i.e., his clothing and samples of pubic hair.

Defendant was charged with assaulting a woman shortly after midnight on June 9, 1978 in Highland Park, Rochester. The next morning the victim was taken to police headquarters where she gave police a description of her attacker, helped prepare a sketch of his face and examined 500 to 600 photographs from the police files. As she examined the files, she tentatively set aside the six photographs depicting men who resembled her attacker. From these six, she finally chose two who "strongly resembled" him, but she did not positively identify either man at that time. One of the two photographs was a picture of defendant. Later that afternoon, when the police shift changed, a detective coming on duty took five photographs to the victim's home for her examination. One was the photograph of defendant which the victim had chosen that morning, but the four others did not include photographs of the six "possibles". Additionally, the photograph of the defendant was distinguishable from the other four photographs then shown to the victim at her home because the police identification number and the date were missing only from his picture. The police detective testified that after he showed the victim the five photos, she positively identified defendant.

■ We agree with the hearing court that this identification procedure when viewed in the light of the totality of surrounding circumstances, was impermissibly suggestive and that any

identification based upon it, including the victim's subsequent identification of defendant a few hours later from a lineup, must be suppressed (see *Simmons v United States*, 390 US 377, 383-384; *Stovall v Denno*, 388 US 293, 302; *People v Ballott*, 20 NY2d 600). Furthermore, in the absence of clear and convincing proof of an independent source, free from the taint of the photo array, the victim's in-court identification must also be suppressed (see *Manson v Brathwaite*, 432 US 98; *Neil v Biggers*, 409 US 188, 199-200; *People v Bennett*, 30 NY2d 283, 286; *People v Ballott, supra*, p 606).

■ We do not agree with the hearing court, however, that the police errors in conducting the photo identification require exclusion of all evidence thereafter acquired.

After the victim identified defendant's photograph the police detective called his home. Defendant was not there and the detective left word for defendant to call back. At about 8:00 P.M. that evening defendant returned the call and at the detective's request he agreed to come to the station house.[1] When he arrived at about 9:00 P.M., the police told him that they were investigating a rape. He was given his *Miranda* rights and agreed to talk with the detectives. He denied any connection with the crime. The hearing court found on sufficient evidence that defendant understood his rights and knowingly waived them. The court also found that no force or undue influence was used on defendant and that his admissions were voluntary. Defendant's mother was present in the police station while he was being questioned and mother and son were offered an opportunity to talk to each other before questioning or to call a lawyer. They chose not to do so.

At about 10:00 P.M. a lineup was held and the victim identified defendant as the man who attacked her. Immediately after the lineup, about 10:20 P.M., when he was told that the victim had identified him, defendant admitted that he had committed the assault. A written statement was prepared, read to him, then by him, and after minor corrections, he signed it. Subsequently, defendant executed a second page to the statement. Throughout the evening the police read the defendant his *Miranda* rights three times; once when he first arrived at the station at 9:00 P.M. and once before he signed

---

1. No issue of unlawful search and seizure under the Fourth Amendment is present on this appeal (see *Dunaway v New York*, 442 US 200; *Brown v Illinois*, 422 US 590; *People v Kocik*, 63 AD2d 230; cf. *People v Morales*, 42 NY2d 129).

each written statement. He waived his rights on each occasion. After taking the statements, police removed defendant's trousers and shorts, which appeared to have a spot on them, and defendant allowed them to comb out a sample of his pubic hair.

The hearing court suppressed defendant's oral and written admissions and the physical evidence because it found them tainted by the improper police identification procedure. It held that the evidence acquired after the lineup was "fruit of the poisonous tree" *(Wong Sun v United States,* 371 US 471, 488). The People contend that suppression of the admissions and physical evidence was not warranted because the police conduct in obtaining the identification, although improper, was not intentional.

In *Wong Sun (supra),* the Supreme Court held that evidence obtained after an illegal arrest or search must be suppressed as the fruits of the illegal police action. The ruling was intended primarily to deter violation of Fourth Amendment rights. Insofar as the illegal police activity produced subsequent admissions by the defendant, the court's inquiry before admitting them was whether the admissions were "sufficiently an act of free will to purge the primary taint of the unlawful invasion" *(Wong Sun v United States, supra,* p 486; see *Brown v Illinois, supra,* pp 598-599). The remedy for illegal police conduct was exclusion of the evidence obtained as a result of that conduct; the purpose of the exclusion was to deter future illegal police conduct *(Neil v Biggers,* 409 US 188, 199-200, *supra; People v Logan,* 25 NY2d 184, 193). As our Court of Appeals has stated, "the single-most, if not sole" justification for the exclusionary rule is its deterrent effect.[2] In considering the applicability of the rule, "perhaps most important factor to be addressed, is whether, accepting the obvious detrimental impact upon the truth-finding process which the exclusionary rule often produces, its accompanying deterrent effect is sufficiently probable to justify its application" *(People v McGrath,* 46 NY2d 12, 31; see, also, *People v Boodle,* 47 NY2d 398). If the goal of deterrence is not satisfied, suppression of relevant evidence is hardly justified. Accordingly, suppression has not

2. References may also be found to "the imperative of judicial integrity" *(Elkins v United States,* 364 US 206, 222) and the premise that no court "may serve as an accomplice in the willful transgression" of the laws *(Lee v Florida,* 392 US 378, 385-386). The deterrent purpose is obviously controlling because there exist exceptions to the exclusionary rule (see *Brown v Illinois,* 422 US 590, 600, and cases cited therein).

been ordered when the police conduct was not unlawful at the time it occurred *(United States v Peltier,* 422 US 531; see, also, *Michigan v De Fillippo,* — US —, decided June 24, 1979) or when the police made an error in good faith *(Michigan v Tucker,* 417 US 433; see *People v Martinez,* 37 NY2d 662).

In *Peltier,* border patrol agents conducted a warrantless search, authorized by statute and lawful at the time the search was made. The Supreme Court later, in another case involving the same statute, held that such searches were unconstitutional. Since the border patrol was acting in good faith pursuant to a presumptively valid statute at the time the *Peltier* search was made, no deterrent purpose was to be served by suppressing the evidence thus obtained and the court refused to do so. Similarly, in *Michigan v Tucker (supra),* the Supreme Court held that a witness could testify whose identity was disclosed to the police by defendant in a statement voluntarily made, i.e., without coercion, but made after he had been given incomplete *Miranda* warnings. The inadvertent failure of the police to advise defendant that he would be furnished counsel free of charge if he could not afford such services himself, was sufficient to require suppression of defendant's subsequent admissions, but the deterrent purpose of the rule was satisfied by suppressing his statements without going further and suppressing as "fruit of the poisonous tree" the testimony of a witness named in his statement.

This case fits well within those rulings and defendant's admissions and the physical evidence should not have been suppressed. Conceding that the police identification procedure was impermissibly suggestive and resulted in evidence that must be excluded under established rules of due process, that evidence was "tainted" only in the sense that it was unreliable. The later acquired evidence was not the product of any illegal police activity that violated defendant's constitutional rights and no deterrent purpose was to be served by suppressing it. There having been no illegal police conduct, there was nothing to "poison" the evidence subsequently but lawfully acquired. In the words of the court in *Wong Sun* (371 US 471, 486, *supra),* there was no "primary taint" to be dissipated. Once the victim's identification was removed from the case, the prosecution could go forward on the basis of the other evidence in the case whether acquired before or after her identification (see *People v Lebron,* 46 AD2d 776; *People v Roe,* 36 AD2d 1012).

The order should be modified by striking from it the provisions suppressing defendant's oral and written admissions and the physical evidence, and, as modified, the order should be affirmed.

CARDAMONE, J. P., SCHNEPP, CALLAHAN and DOERR, JJ., concur.

Order unanimously modified and, as modified, affirmed, in accordance with opinion by SIMONS, J., and matter remitted to Supreme Court, Monroe County, for further proceedings.