■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN KELLY BEAM, Appellant. — Appeal from a judgment of the County Court of Broome County (Smyk, J.), rendered November 30, 1978, upon a verdict convicting defendant of three counts of the crime of sodomy in the first degree. In April and May of 1978, several male teenagers in the Binghamton area reported being sexually assaulted. The pattern of these encounters was essentially the same; the assailant first offered the victim marihuana and lured him to a point near a river, telling the victim along the way that he was from out of town. He would suddenly begin choking the victim, and then force him to engage in French kissing, followed by oral and anal sodomy. Police investigation of these incidents led them to suspect defendant. When defendant became aware the police were seeking to question him, he consulted an attorney. He told the attorney he was being sought for questioning because of an altercation he and another fellow had engaged in on May 15 at which time there had been some "pushing and shoving". Rather than disclose his involvement in sexual assaults, he gave his attorney the impression he was being sought because of a single incident and that only harassment or something similar was at stake. In fact, defendant's conduct during this incident later became the basis of a charge that he' had attempted to sodomize a youth named Zduniak. The attorney instructed defendant to go down to the police station and talk to the police about the incident but not to sign anything. At the station house, defendant was given *Miranda* warnings, stated he had an attorney, that he would not sign anything, but that he would talk with police, and did so. Immediately after he had been questioned regarding the Zduniak incident, during which time he maintained that Zduniak was the attacker but fled following a scuffle and that no sexual acts had been performed, his attorney telephoned the police station to inquire if defendant had arrived, was told he had, and learned that he was following the attorney's instructions. The police, unaware that the attorney had not been fully informed by defendant regarding the seriousness of the matters he was apt to be questioned about, then stated they wished to ask defendant about "some other incidents involving other people". The officer did not elaborate on the nature of these incidents and counsel, apparently assuming they were no more weighty than the "pushing and shoving" incident initially related to him, permitted the police to do so. Defendant thereupon admitted sexually attacking other young males. Defendant having successfully moved for separate trials of each of the incidents, this appeal is limited to one which occurred on April 10, 1978. Over defendant's objection, however, the prosecution was permitted to introduce into evidence testimony by three other victims, who described the attacks upon them and then identified defendant as the perpetrator. Several of defendant's conten-

---

tions deserve comment. Most forceful is his assertion that it was error for the court to have admitted the incriminating statements he made to the police for they were taken in violation of his right to counsel. The issue presented is whether defendant's waiver, made telephonically by his attorney, was effective when neither defendant nor the police informed the attorney as to those matters about which defendant was likely to be questioned. The statements were properly admitted. If an attorney has entered the proceedings, the police should be entitled to assume that his client has fully and frankly acquainted him with the reasons for his need of counsel and that a waiver made on counsel's advice is both voluntary and intelligent. Considering that it is an advocate's duty to protect his client's rights, requiring the police to ensure that defense counsel perceives the possible consequences of waiving those rights is a burden the police should not be obliged to undertake (see *People v Rogers,* 48 NY2d 167, 173). Moreover, suppression of defendant's statements would have the indefensible consequence of benefiting him for having misled his attorney. Finally, we note that a waiver communicated by counsel by telephone is effective *(People v Yut Wai Tom,* 53 NY2d 44). Defendant also urges that admission of the other victims' testimony only served to inflame the jury and that the resulting prejudice outweighed any probative value such testimony might otherwise have had. That argument is also unconvincing. The identity of the perpetrator of the crime was directly put in issue not only by defendant's own testimony denying guilt, but also by the defense's attempt on cross-examination to discredit the victim's identification of defendant. As the accused's identity had not been conclusively established, it was permissible for the prosecutor to offer proof of other crimes having a sufficiently unique *modus operandi (People v Allweiss,* 48 NY2d 40). In this instance, the attacks had sufficient common oddities to allow introduction of this testimony for the limited purpose, as the trial court on several occasions very carefully instructed, of enabling the jury to determine whether or not defendant was the same person who had committed the crime charged here. It is also claimed that subdivision 8 of section 130.00 of the Penal Law is unconstitutionally vague in that its definition of forcible compulsion as being physical force "which is capable of overcoming earnest resistance" is a pure abstraction which renders legally irrelevant the actual amount of resistance offered by a victim (see Hechtman, 1977 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 39, 1980-1981 Pocket Part, Penal Law, § 130.00, p 230). That argument has been confronted and found wanting in *People v Beam* (83 AD2d 82). It has even less merit here for actual resistance was indeed employed. Judgment affirmed. Main, J. P., Yesawich, Jr., Weiss and Herlihy, JJ., concur.

Mikoll, J., dissents and votes to reverse in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. The factual pattern of this case involves a defendant who voluntarily came to the Binghamton Police Station in response to a message that the police wished to see him. Defendant had previously consulted an attorney with whom he discussed what he thought the police wished to see him about. The attorney told him to go to the station but not to sign anything. Upon appearing at the station, defendant advised the police that he had a lawyer who had instructed him to come to the station but not to sign anything. The police read *Miranda* warnings to defendant. Defendant refused to sign an acknowledgment that these rights had been read to him. The police then questioned him about an incident involving a Mark Zduniak. Defendant told them that Mark had attacked him and he had run away after pushing Mark. At this point McAvoy, defendant's counsel, called and spoke to the police and advised them that defendant was not to sign anything. The police told him that they were questioning defendant about

other incidents. They also said that defendant refused to sign an acknowledgment that his *Miranda* rights had been given to him. The attorney told the police to tell defendant that he could sign the *Miranda* acknowledgment and that he could discuss the other incidents, but he wanted to see any statement before defendant signed it. This information was relayed to defendant. Defendant signed the *Miranda* acknowledgment and continued to speak to the police. The police proceeded to question him about his furtive movements on April 11, when he was seen by police on Main Street and had run away. Defendant explained that he ran because he thought the police may have wanted him for something. The police said that they did want him because he fit the description of a person who had attacked a young male earlier that evening. Defendant said he was that person but he did not know how much he ought to tell about it without talking to his attorney. The police then said that defendant fit the description of an assailant on several other incidents involving attacks on young males. Defendant told the police that he might need help and if he did tell them about the incidents, he did not want them to tell anybody about it, including his attorney. Defendant asked if he could sign himself into a State hospital and not be charged. He was informed that he would have to be charged. Defendant asked permission to call his attorney. The questioning ceased at this point. Defendant sought to have the statements suppressed on the ground that they were taken in the absence of his counsel without a valid waiver of his right to counsel. It hardly needs reiteration that when a lawyer has entered a proceeding representing a defendant in connection with criminal charges under investigation, and the police are aware that the person being investigated has counsel, they cannot question the defendant without his counsel being present unless a waiver of the right to counsel is made in the attorney's presence *(People v Kazmarick,* 52 NY2d 322; *People v Skinner,* 52 NY2d 24). Under the facts in the instant case, defendant's attorney could not unilaterally waive defendant's right to counsel. The right to waive counsel belongs to defendant and is to be made only after consultation with his counsel. From these facts, it cannot be concluded that there was either an intelligent or a competent waiver of counsel *(People v Hobson,* 39 NY2d 479). This case is totally unlike *People v Yut Wai Tom* (53 NY2d 44), cited by the majority for the proposition that waiver of counsel can occur telephonically. The statements made by defendant should have been suppressed. Their admission constitutes error of constitutional dimensions requiring a reversal of the conviction.