■ The People of the State of New York, Respondent, v Ronald Sheldon Chamberlain, Appellant. — Appeal from a judgment of the County Court of Broome County (Coutant, J.), rendered June 12, 1981, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, robbery in the first degree, and criminal use of a firearm in the first degree. On December 19, 1980, defendant was indicted for attempted murder in the second degree, robbery in the first degree and criminal use of a firearm in the first degree following an incident that occurred on the morning of September 12, 1980 during which one Paul May was shot and robbed outside his home by a lone assailant. On April 13, 1981, witness Lane positively identified defendant at a lineup, although Lane had previously been unable to identify defendant from a photo array. The suppression court determined that the identification procedures were not impermissibly suggestive and defendant was ultimately convicted, after jury trial, on each count in the indictment. Defendant's motion to set aside the verdict for juror misconduct was denied after a hearing. Defendant first contends that the identification was flawed in that the procedures utilized by the police were unduly suggestive. We disagree. The record reveals that Lane was shown a photo array on November 18, 1980 consisting of 10 photos, including defendant's. Defendant asserts prejudice from the fact his photo was the only one without a name and police identification number printed on the back. We find the distinction without merit, not only because there is nothing in the record to establish Lane viewed the reverse side of the various photographs, but also because the photo array consisted of males similar in appearance and age to defendant. Moreover, since Lane was unable to make a positive identification from this photo array and defendant shaved his beard prior to the lineup, we find little likelihood of irreparable misidentification (see *Simmons v United States*, 390 US 377, 384; *People v Haynes*, 88 AD2d 1070). As to the lineup procedure, we first note that the difference in

height between defendant and the other four participants was minimal and certainly not unduly suggestive considering the obvious similarities between defendant and other participants. Nor do we find prejudice in the fact that defendant was the only lineup participant included in the prior photo array. While defendant produced expert testimony that such repetition created a possibility that Lane's identification resulted from the procedure used and not the witness' recollection, we look to the "totality of the circumstances" to determine the reliability of the identification (see *People v Jones,* 85 AD2d 50). Here, the difference in appearance between the men in the photo array (all bearded) and the lineup participants (all clean shaven), coupled with the passage of almost five months between the photo array and lineup, negates any suggestiveness. To be distinguished are *People v Hall* (81 AD2d 644) and *People v Tindal* (69 AD2d 58), in which repetitive photo arrays were conducted within a short span of time. In any event, the People have established by clear and convincing evidence that Lane had ample opportunity to view the assailant during the commission of the crime. He first observed the assailant hunched over May in the victim's front yard, and then again from a distance of about 75 feet when the assailant turned in Lane's direction for approximately 10 to 15 seconds. From these observations, Lane was able to provide an adequate facial description of the assailant. In our view, Lane's in-court identification had an independent origin and was properly admitted into evidence (*People v Van Buren,* 87 AD2d 900; *People v Rogers,* 85 AD2d 843). Defendant next contends that the trial evidence failed to establish the assailant's identity beyond a reasonable doubt. Viewing the evidence in a light most favorable to the People (*People v Lipsky,* 57 NY2d 560, 563), and in consideration of the foregoing discussion, we find the prosecution made a prima facie showing that Lane's identification testimony was reliable. It was thus within the jury's province to assess the weight to be accorded this testimony (see *People v Ganci,* 27 NY2d 418, cert den 402 US 924). Beyond this direct evidence of identification, our review of the circumstantial evidence presented against defendant satisfies us that guilt was proven beyond a reasonable doubt (see *People v Bell,* 94 AD2d 894). We further find that the court did not err by allowing evidence of defendant's involvement in prior uncharged crimes. The only point that merits consideration in this regard is defendant's contention that the court erred by admitting evidence concerning his possession of handguns at times before and after the subject incident. Although evidence of prior criminal conduct is not admissible to prove a defendant has a criminal predisposition, it may be admissible to establish identity under certain limited circumstances (*People v Molineux,* 168 NY 264, 293; see *People v Allweiss,* 48 NY2d 40; *People v Beam,* 84 AD2d 653, 654, affd 57 NY2d 241). There is little question that the accused's identity presented a crucial issue in this case. Since the prosecution established that .357 caliber bullets were used in the shooting, testimony that defendant possessed a .357 magnum weapon two weeks before the crime, and attempted to dispose of a handgun immediately thereafter, was relevant and properly admitted into evidence. We have examined defendant's remaining contentions and find them without merit. The trial court did not err by refusing to admit into evidence a written prior inconsistent statement of a prosecution witness since cross-examination concerning inconsistencies was in no way restricted and was sufficiently exacting. The jury had an opportunity to weigh the witness' credibility (*People v Piazza,* 48 NY2d 151, 164, 165). Nor did the court abuse its discretion by refusing to set aside the verdict on a contention of improper conduct by one of the jurors (CPL 330.30, subd 2). While it was established that, during the week of the trial, a juror visited the Broome County Jail where defendant was held, the juror testified that, as a maintenance man employed by the county, such visits were part of his normal

961

workday. Defendant failed to present any credible evidence demonstrating that the juror's conduct was in any way prejudicial to his case. We are of the opinion that defense counsel provided meaningful representation and thus there was no denial of effective assistance of counsel (*People v Baldi,* 54 NY2d 137). Defendant's argument essentially confuses mere losing trial tactics with truly ineffective representation (see *People v Smith,* 59 NY2d 156, 165-166; *People v Eddy,* 95 AD2d 956). Judgment affirmed. Sweeney, J. P., Casey, Yesawich, Jr., Weiss and Levine, JJ., concur.