OPINION OF THE COURT
Donald J. Mark, J.
The defendant, who was charged with the crime of robbery, second degree, and related crimes, made an application pursuant to CPL 210.20 (1) (h) to dismiss the indictment, or in the alternative, pursuant to CPL 710.20 (6) to suppress the identification testimony, upon the ground that the same photographic array that was displayed to the victim before the *917 defendant’s arrest, was shown to the victim on the eve of trial.[1]
The defendant was arrested for nonrelated crimes on January 11, 1992, and his photograph was taken during the normal booking process. That photograph was shown by a police investigator to the victim in a photographic array of six photographs, and the victim identified the defendant as the perpetrator of the robbery. Thereafter the defendant was arrested on the robbery charge and the related charges which are the subject of this indictment. On October 13, 1992, after the commencement of jury selection, the prosecutor displayed the same photographic array to the victim, and she again identified the defendant. The prosecutor commendably advised the defendant’s attorney of this procedure, and the instant motion followed.
Two legal principles come into conflict here, the first is that the defendant has the right not to be subjected to the risk that a witness’ prior identification of him is reinforced by repeated showings of a photograph (see, People v Brown, 117 Misc 2d 587)[2] which was the basis of the defendant’s claim; the second is that the prosecutor has the right to interview his witnesses and prepare them for trial (see, People v Torres, 103 AD2d 972), which was the prosecutor’s defense to this allegation of misconduct.
Discussion of this issue must start with the acknowledgment that multiple photographic identification procedures are not inherently suggestive[3] (People v Chapman, 161 AD2d 1156, lv denied 76 NY2d 854 [the witness was shown two arrays a day apart and the defendant was the only person whose photograph appeared in both arrays; the defendant was not identified from the first array but was identified from the second]; People v Cordilione, 159 AD2d 864, lv denied 76 NY2d 786 [different photos of the defendant were included in two arrays *918 conducted three days apart; the defendant was tentatively identified in both arrays and positively identified in a lineup approximately 50 days later]; People v Cosme, 125 AD2d 485, lv denied 69 NY2d 878 [the victim identified the defendant after viewing hundreds of photographs, he again identified the defendant three weeks after viewing an array of six photographs and he again identified defendant three weeks thereafter after viewing a lineup]).
However, repetitive photographic arrays conducted within a short span of time are to be distinguished (People v Chamberlain, 96 AD2d 959), especially where there is a hint of suggestiveness (People v Hall, 81 AD2d 644 [a witness tentatively identified two photographs out of eight, one of which was the defendant’s photograph; he was then shown a larger photograph of the defendant along with the photographs of five individuals not previously displayed, but not a larger photograph of the person in the second photograph previously chosen]; People v Tindal, 69 AD2d 58 [the victim examined at least 500 photographs, tentatively selected six photographs and finally narrowed the six to the photographs of two men who "strongly resembled” her attacker; later that same day a detective showed the victim a photograph of the defendant, one of the two "finalists,” and four different photographs, and the defendant’s photograph was the only one lacking markings]).
The photographic identification procedure employed here, wherein the second viewing transpired approximately 10 months after the first viewing, comes within the permissible category[4] (see, People v Chamberlain, supra [a photographic array, which included a photograph of the defendant, was held on November 18, 1980, with negative results, and a positive identification was made at a lineup conducted on April 13, 1981; suppression was denied despite expert testimony that such repetition created a possibility that the identification resulted from the procedure used and not from recollection]).
A major concern with this procedure was that the second photographic array was conducted by the prosecutor the day before the victim was scheduled to testify.[5] A somewhat simi *919 lar case, People v Horonzy (177 AD2d 254), supports the conclusion that the observation of a defendant’s photograph just prior to trial will not result in a per se suppression of in-court identification. There, several days after the hearing, at which the witness testified about the circumstances surrounding her observations of the defendant and identified him in court, the witness accidentally saw a photograph of the defendant the morning of her trial testimony. The holding of the appellate court was that the witness’ in-court identification of the defendant several days after the hearing was not tainted by the accidental viewing of the defendant’s photograph in the interim. This decision did not appear to be based upon the accidental nature of viewing due to the absence of police involvement (see, People v Gonzalez, 46 NY2d 1011), but rather upon the positiveness of the identification (see, People v Harris, 133 AD2d 649, lv denied 70 NY2d 932). Obviously, there was no accidental showing here, but there was a positive prior identification.
The only remaining consideration was whether the procedure this prosecutor employed was suggestive, and therefore a Wade hearing (United States v Wade, 388 US 218) was held prior to the testimony of the victim.
The prosecutor testified that she informed the victim that she intended to show her a photographic array; that she did not tell the victim that it was the same photographic array she had viewed previously; that she stated nothing relative to the defendant’s photograph being included or not included; that she fanned the six photographs like playing cards; that the photograph of the defendant was in the middle of the six photographs; that she held the photographs in a manner which covered the numbers on the photographs; that she did not advise the victim which photograph the victim had selected on the prior occasion; that she only asked the victim if she could identify anyone in the array; that was the extent of her conversation with the victim prior to the display; that immediately upon seeing the array the victim stated she recognized it as the prior array; that the victim told the prosecutor that she had previously selected a photograph with the number "three”; that although the number on the photograph was covered, the victim immediately retrieved that photograph from the array; that the photograph the victim *920 chose was that of the defendant; and that she did not inform the victim that she had selected the correct photograph.
At the conclusion of the hearing the ruling was made that this identification procedure was not suggestive (People v Smith, 179 AD2d 1022) and that the People were not obligated to prove an independent source for the victim’s in-court identification (see, People v Dean, 177 AD2d 792).
Accordingly, the application of the defendant to dismiss the indictment, or in the alternative, to suppress the identification testimony, was denied

. This is different from a claim of impermissible "bolstering,” which occurs when a witness testifies at trial on the People’s direct case that he previously identified the defendant from a photographic array (see, People v Hines, 112 AD2d 316).

. Dr. Robert Buckhout, an expert in the field of memory and perception, was permitted to testify at the hearing only in Brown (supra), and he opined that the repeated showing of a defendant’s photograph "created” memory, and memory once tainted, could not be rehabilitated.

. The appellate courts have ruled the same way in situations involving the identification of the defendant from a photographic array after which defendant was identified again in a lineup (People v Caban, 181 AD2d 787; see, People v Denny, 177 AD2d 589; People v Jones, 171 AD2d 757).

. See People v Joyiens (39 NY2d 197) where the first and only photographic array occurred 10 months after the commission of the crime.

. An interesting point is that a prosecutor on his direct case can introduce a photograph of a lineup into evidence (see, People v Baity, 178 AD2d 190), and so in preparing his witness for trial (see, People v Torres, 103 *919 AD2d 972, supra), he could properly show such a photograph to that witness.