■ The People of the State of New York, Respondent, v Ariel Myers, Appellant. [963 NYS2d 464]—

Lahtinen, J. Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered September 13, 2010, upon a verdict convicting defendant of the crimes of assault in the first degree and criminal possession of a weapon in the second degree.

On September 13, 2009, a fight broke out and crowds gathered at about 1:30 a.m. and again at 3:30 a.m. outside the victim's home, which was near the Griswold Heights Apartment Complex in the City of Troy, Rensselaer County. During the second fracas, the victim exited his home with a camera and started taking photographs of those involved. Profanity-laced comments were directed at the victim telling him to stop taking photographs. A gun was then fired and a .25 caliber bullet struck the victim in the head, causing him to sustain permanent injuries whereby he will require around-the-clock care for the remainder of his life. The ensuing investigation resulted in police soon focusing on defendant, who was eventually located nearly two weeks later hiding in a vacant apartment. He was indicted in October 2009 on one count of attempted murder in the second degree, two counts of assault in the first degree and two counts of criminal possession of a weapon in the second degree. A jury acquitted defendant of attempted murder, but convicted him of one count of assault in the first degree and one count of criminal possession of a weapon in the second degree. County Court sentenced defendant to concurrent prison terms of 25 years for assault and 15 years for criminal possession of a weapon, together with postrelease supervision. Defendant appeals.

Defendant initially challenges County Court's *Molineux* ruling in which it permitted Robert Cruz to testify about seeing defendant wielding a .25 caliber handgun about 2½ months before the subject shooting. Although evidence of uncharged crimes or bad acts is not admissible to prove criminal propensity, nevertheless, one of the recognized exceptions permits such evidence under some circumstances when identity is at issue and such proof is pertinent thereto (*see People v Agina*, 18 NY3d 600, 603 [2012]; *People v Chamberlain*, 96 AD2d 959, 960 [1983]). Here, the identity of the shooter was a key issue at trial and the fact that defendant previously had been seen brandishing the same caliber of handgun as was used to commit the crime was relevant to the issue of identity (*see People v Burnell*, 89 AD3d 1118, 1121 [2011], *lv denied* 18 NY3d 922 [2012]; *People v Portee*, 56 AD3d 947, 950 [2008], *lv denied* 12 NY3d 820 [2009]; *People v Rivera*, 281 AD2d 702, 703 [2001], *lv denied* 96

NY2d 805 [2001]; *People v Brown*, 266 AD2d 863, 863 [1999], *lv denied* 94 NY2d 860 [1999]). The People established that this evidence was relevant to a material issue (*see People v Cass*, 18 NY3d 553, 560 [2012]), and County Court did not abuse its discretion in determining that the probative value outweighed the danger of prejudice (*see id.*; *People v Burnell*, 89 AD3d at 1121). County Court further gave an appropriate limiting instruction both when the proof was presented and in its charge to the jury (*see People v Dorm*, 12 NY3d 16, 19 [2009]; *People v Reid*, 97 AD3d 1037, 1038 [2012], *lv denied* 19 NY3d 1104 [2012]).

Next, defendant argues that County Court erred in allowing the People to introduce evidence purporting to show defendant's consciousness of guilt. Consciousness of guilt evidence is weak, but it "may be admissible so long as it is relevant, meaning that it has a tendency to establish the fact sought to be proved—that defendant was aware of guilt" (*People v Bennett*, 79 NY2d 464, 470 [1992]; *see People v Cintron*, 95 NY2d 329, 332-333 [2000]). Defendant was found 13 days after the shooting hiding in a vacant apartment adjoining his sibling's residence. County Court allowed the proof after finding that its probative value outweighed its prejudicial impact. The court later restricted the extent of the People's use in summation of the consciousness of guilt evidence and charged the jury that such evidence is often of slight value and cannot be the sole basis for a finding of guilt. We are unpersuaded that the trial court's handling of this issue constituted reversible error (*see People v Scharpf*, 60 AD3d 1101, 1103 [2009], *lv denied* 13 NY3d 862 [2009]; *People v Price*, 135 AD2d 750, 750-751 [1987], *lv denied* 71 NY2d 972 [1988]).

The jury verdict is supported by legally sufficient evidence and is not against the weight of the evidence. When considering legal sufficiency, we view the evidence "in a light most favorable to the People and will not disturb a verdict as long as there is a 'valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury' " (*People v Blond*, 96 AD3d 1149, 1151 [2012], *lv denied* 19 NY3d 1101 [2012], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]). The victim's wife testified that her husband went outside to take pictures of the crowd, she heard someone state "this is what you get" followed by a single gunshot, and the crowd scattered as she ran outside finding her husband bleeding from his head. Several witnesses reported seeing defendant, who was visible because of his height, in the crowd and in the vicinity from where the gun was fired. One witness, Frank Mc-

Givern, was watching from his nearby apartment and had previously seen defendant many times as someone living in the neighborhood. McGivern identified defendant as the shooter. He recalled seeing the victim start taking pictures and people in the crowd yelling at him. McGivern stated that he watched as the tallest individual in the crowd put his arm out and a flame appeared to come out of this individual's arm as a gun was fired. The people from the crowd then began running in various directions and McGivern visually followed the tall individual who had apparently fired a gun. That individual ran near McGivern's window, and he recognized him as defendant. The evidence was legally sufficient to identify defendant as the person who fired the gun and to otherwise support the convictions.

Where, as here, a different verdict would not have been unreasonable, our weight of the evidence analysis involves "weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, while giving due deference to the jury's credibility determinations" (*People v Callicut*, 101 AD3d 1256, 1259 [2012], *lv denied* 20 NY3d 1096 [2013]; *see People v Romero*, 7 NY3d 633, 643-644 [2006]; *People v Barringer*, 54 AD3d 442, 443 [2008], *lv denied* 11 NY3d 830 [2008]). Several of the People's witnesses had criminal histories and there were inconsistencies in some testimony. Most notably, Cruz, the witness who testified about seeing defendant previously wielding a .25 caliber handgun, had an extensive criminal record and acknowledged that he contacted police regarding defendant in order to receive favorable treatment in a pending criminal matter. Further, although McGivern initially testified that he saw defendant pull a gun out of his waist, point and shoot across the street at the victim, upon closer questioning McGivern acknowledged that he could not see the shooter's face at the time the gun fired because the shooter's back was toward him (but he identified him as defendant as he fled the scene) and he did not see a gun (but saw a flame appear to come out of the shooter's arm). These weaknesses in the People's case were amply brought out at trial and presented credibility issues for the jury. Upon weighing and considering the evidence in the record, we find that the jury's verdict is supported by the weight of the evidence (*see People v Sharpe*, 70 AD3d 1184, 1185 [2010], *lv denied* 14 NY3d 892 [2010]).

Defendant contends that he was deprived of a fair trial by two statements made by the prosecutor during summation. In commenting upon and explaining McGivern's delay in contacting police, the prosecutor indicated in a somewhat colorful

fashion that McGivern faced the same fate as the victim if he contacted police. County Court directed the prosecutor to "tone it down" and the statement, while inartful and embellished, was otherwise a fair comment on McGivern's testimony that he did not immediately talk to police because he had to live in the neighborhood. In a second challenged summation comment, the prosecutor stated that police were all over the case and the people they interviewed all told them that defendant was involved. Counsel objected and County Court immediately instructed the jury to disregard the statement and added that there was no such evidence at trial. Although this comment by the prosecutor was improper, County Court promptly provided a curative instruction (*see People v Hendrie*, 24 AD3d 871, 873 [2005], *lv denied* 6 NY3d 776 [2006]). Review of the prosecutor's summation does not reveal the level or frequency of misconduct as to require reversal (*see People v Weber*, 40 AD3d 1267, 1268 [2007], *lv denied* 9 NY3d 927 [2007]; *cf. People v Gorghan*, 13 AD3d 908, 909 [2004], *appeal dismissed* 4 NY3d 798 [2005]; *People v Tarantola*, 178 AD2d 768, 770 [1991], *lv denied* 79 NY2d 954 [1992]).

Finally, defendant urges that sentencing him to the maximum period of incarceration on both counts was harsh and excessive. Although he was 18 years old when he committed these crimes and had no prior criminal record, nonetheless, defendant's actions were senseless and callous with catastrophic consequences for the 36-year-old victim as well as his wife and three children. Finding neither an abuse of discretion nor extraordinary circumstances, we decline to disturb the sentence (*see People v Smith*, 41 AD3d 964, 967 [2007], *lv denied* 9 NY3d 881 [2007]; *People v Jennings*, 20 AD3d 777, 778 [2005], *lv denied* 5 NY3d 829 [2005]; *People v Leader*, 285 AD2d 823, 825 [2001], *lv denied* 97 NY2d 756 [2002]).

Mercure, J.P. and Rose, J., concur.

Garry, J. (dissenting). I respectfully dissent, finding that the evidence of defendant's alleged previous possession of a .25 caliber gun should have been prohibited by application of the *Molineux* rule. As neither of the two required elements of the "identity" exception to this rule was shown by clear and convincing evidence, admission of this testimony was an abuse of discretion as a matter of law. Considered in light of the other proof at trial, this error requires reversal.

The *Molineux* rule limits the admissibility of evidence of prior uncharged crimes, as such evidence is so inherently prejudicial that it may induce a conviction for the wrong reasons (*see People v Cass*, 18 NY3d 553, 559 [2012]). The so-called "identity" or

"modus operandi" exception is applied only "in limited circumstances" (*People v Toland*, 284 AD2d 798, 803 [2001], *lv denied* 96 NY2d 942 [2001] [internal quotation marks and citation omitted]), and requires clear and convincing proof of *both* "the identity of the defendant as the perpetrator of the prior crimes" and "that the *modus operandi* of the crimes is so unique as to make the evidence highly probative" (*People v Neu*, 126 AD2d 223, 225 [1987], *lv denied* 70 NY2d 652 [1987]; *see People v Latimer*, 24 AD3d 807, 809 [2005], *lv denied* 6 NY3d 849 [2006]). "[A] [t]rial [j]udge who admits evidence of an uncharged crime on the issue of identity on less than clear and convincing proof of both a unique *modus operandi* and of [the] defendant's identity as the perpetrator of the crime abuses his [or her] discretion as a matter of law" (*People v Robinson*, 68 NY2d 541, 550 [1986]).

Where these elements are established by this standard, the probative value of the evidence must then be balanced against its potential for prejudice. This balancing requires "special care," and mere reliance on other cases in which similar evidence has been found to be admissible does not suffice (*People v Wlasiuk*, 32 AD3d 674, 677 [2006], *lv dismissed* 7 NY3d 871 [2006] [internal quotation marks and citation omitted]); a "case-specific" analysis is necessary (*People v Westerling*, 48 AD3d 965, 966 [2008]; *accord People v Tyrell*, 82 AD3d 1352, 1355 [2011], *lv denied* 17 NY3d 810 [2011]). Here, County Court merely recited the balancing standard in a conclusory manner. The record fails to reveal any analysis of the required elements (*compare People v Burkett*, 101 AD3d 1468, 1471 [2012], *lv denied* 20 NY3d 1096 [2013]; *People v Tyrell*, 82 AD3d at 1355), and—upon independent review—fails to support the admission of this evidence.

The proof of defendant's alleged prior crime allowed here was the testimony of a single witness, Robert Cruz, who described an incident that had occurred roughly 2½ months earlier, in which he claimed to have seen defendant pull out a .25 caliber gun at the same apartment complex where the victim was shot with a .25 caliber weapon. Cruz testified that on the earlier occasion, he and a number of relatives—several of whom he identified by name—were watching a fight on the grounds of the apartment complex, that Cruz recognized defendant among the other onlookers, that defendant pulled out a weapon and "[e]verybody started yelling, '[g]un'" and that "Street Crimes came up there with a camcorder, you know, the police, and I seen them come up there with a camcorder and stuff." Despite the testimony regarding police involvement, the People did not

substantiate Cruz's account with evidence that police had in fact responded to a fight or gun-related incident on this occasion, nor was there any testimony offered by Cruz's relatives or any other witnesses supporting his claim that "everybody" reacted to the gun (*compare People v Wandoloski*, 128 AD2d 568, 569 [1987]).[1] There was no specific description of the gun, and there was no other evidence revealing that defendant had ever possessed a gun or other weapon.

Cruz readily acknowledged that he belatedly reported this alleged incident to police only because he was hoping for favorable treatment in regard to a criminal charge then pending against him, and only after he had telephoned several friends from jail to acquire information that he could use for this specific purpose; he later acknowledged at trial that the short sentence he subsequently received on the pending charge "more than likely" reflected consideration for his cooperation. Further, he described an extensive history of prior crimes, incarcerations, plea bargains and other brushes with the law in a manner that called his veracity and credibility into significant question. While none of this rendered Cruz's testimony incredible as a matter of law, his uncorroborated, self-serving claims do not constitute clear and convincing proof that defendant perpetrated the earlier offense (*see People v Robinson*, 68 NY2d at 550; *People v Crawford*, 4 AD3d 748, 748-749 [2004], *lv denied* 2 NY3d 797 [2004]; *compare People v Kindred*, 60 AD3d 1240, 1242 [2009], *lv denied* 12 NY3d 926 [2009]).

Further, there is no clear and convincing proof that the two incidents involved a sufficiently unique modus operandi "to *compel* the inference that . . . defendant committed both" (*People v Beam*, 57 NY2d 241, 251 [1982] [emphasis added]; *accord People v Agina*, 18 NY3d 600, 603 [2012]). As above, Cruz described the gun he had allegedly seen solely by its caliber. No witness saw the gun that injured the victim, and that gun was never found. A firearms examiner reported that the shot that struck the victim could have been fired by any of a list of weapons too long for publication.[2] The instant matter is thus readily distinguished from other cases where evidence of possession of a weapon has been admitted under the identity exception, as they have involved weapons with distinctive characteristics (*see e.g. People v Brown*, 266 AD2d 863, 863 [1999], *lv denied*

---

**1.** County Court did not conduct a *Molineux* hearing, but relied upon a transcript of Cruz's testimony from defendant's earlier mistrial on the same charges.

**2.** This expert later testified that approximately 40 weapons with varying characteristics could have been used.

94 NY2d 860 [1999] [silver .380 caliber handgun]; *People v Sheriff*, 234 AD2d 894, 895 [1996], *lv denied* 90 NY2d 910 [1997] [chrome-plated handgun]) or possession on multiple occasions, or so close in time to the charged crime as to give rise to an inference that the same weapon was used (*see e.g. People v Portee*, 56 AD3d 947, 949-950 [2008], *lv denied* 12 NY3d 820 [2009] [three witnesses said the defendant "routinely" carried weapon of caliber used in charged offense]; *People v Rivera*, 281 AD2d 702, 703 [2001], *lv denied* 96 NY2d 805 [2001] [prior and subsequent possession of a firearm "resembling" the one used in the charged crime]; *People v Chamberlain*, 96 AD2d 959, 960 [1983] [the defendant possessed a similar weapon two weeks before charged crime and attempted to dispose of it immediately afterward]; *see also People v Burnell*, 89 AD3d 1118, 1121 [2011], *lv denied* 18 NY3d 922 [2012] [the defendant's prior possession of a .40 caliber weapon demonstrated his "familiarity with and access to weapons," although it was not directly linked with the .40 caliber weapon used in the charged crimes]).

The mere fact that defendant was allegedly seen with a .25 caliber weapon on an occasion over two months prior to the crime does not reveal any unique and distinctive modus operandi, nor a "distinctive repetitive pattern" (*People v Arafet*, 13 NY3d 460, 466 [2009] [internal quotation marks and citation omitted]; *see People v Allweiss*, 48 NY2d 40, 47-48 [1979]). The only behavior described was the act of pulling out a gun—there is nothing unique or distinctive about this act, standing alone— and the weapon was not fired during the alleged earlier incident. Defendant's mere presence in the same place twice is certainly not unusual, as other people were also present on both occasions. There was simply no evidence that might be considered " 'so unique that the mere proof that . . . defendant had committed a similar act would be highly probative of the fact that he committed the one charged' " (*People v Arafet*, 13 NY3d at 466, quoting *People v Condon*, 26 NY2d 139, 144 [1970]; *see People v Pittman*, 49 AD3d 1166, 1167 [2008]).

In the absence of clear and convincing proof of either of the two required elements—that defendant perpetrated the earlier uncharged incident or that he used a distinct modus operandi— Cruz's testimony was so lacking in probative value that it was necessarily outweighed by its potential for prejudice, and its admission was an abuse of discretion as a matter of law (*see People v Robinson*, 68 NY2d at 549-550; *see also People v Hudy*, 73 NY2d 40, 56 [1988], *abrogated on other grounds* 529 US 513 [2000]). Finally, although the other trial evidence upon which defendant was convicted was legally sufficient, it was not

overwhelming. This error was not harmless, and the judgment of conviction should be reversed. Ordered that the judgment is affirmed.