Lahtinen, J.
Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered September 13, 2010, upon a verdict convicting defendant of the crimes of assault in the first degree and criminal possession of a weapon in the second degree.
On September 13, 2009, a fight broke out and crowds gathered at about 1:30 a.m. and again at 3:30 a.m. outside the victim’s home, which was near the Griswold Heights Apartment Complex in the City of Troy, Rensselaer County. During the second fracas, the victim exited his home with a camera and started taking photographs of those involved. Profanity-laced comments were directed at the victim telling him to stop taking photographs. A gun was then fired and a .25 caliber bullet struck the victim in the head, causing him to sustain permanent injuries whereby he will require around-the-clock care for the remainder of his life. The ensuing investigation resulted in police soon focusing on defendant, who was eventually located nearly two weeks later hiding in a vacant apartment. He was indicted in October 2009 on one count of attempted murder in the second degree, two counts of assault in the first degree and two counts of criminal possession of a weapon in the second degree. A jury acquitted defendant of attempted murder, but convicted him of one count of assault in the first degree and one count of criminal possession of a weapon in the second degree. County Court sentenced defendant to concurrent prison terms of 25 years for assault and 15 years for criminal possession of a weapon, together with postrelease supervision. Defendant appeals.
Defendant initially challenges County Court’s Molineux ruling in which it permitted Robert Cruz to testify about seeing defendant wielding a .25 caliber handgun about 21/2 months before the subject shooting. Although evidence of uncharged crimes or bad acts is not admissible to prove criminal propensity, nevertheless, one of the recognized exceptions permits such evidence under some circumstances when identity is at issue and such proof is pertinent thereto (see People v Agina, 18 NY3d 600, 603 [2012]; People v Chamberlain, 96 AD2d 959, 960 [1983]). Here, the identity of the shooter was a key issue at trial and the fact that defendant previously had been seen brandishing the same caliber of handgun as was used to commit the crime was relevant to the issue of identity (see People v Burnell, 89 AD3d 1118, 1121 [2011], lv denied 18 NY3d 922 [2012]; People v Portee, 56 AD3d 947, 950 [2008], lv denied 12 NY3d 820 [2009]; People v Rivera, 281 AD2d 702, 703 [2001], lv denied 96 *1252 NY2d 805 [2001]; People v Brown, 266 AD2d 863, 863 [1999], lv denied 94 NY2d 860 [1999]). The People established that this evidence was relevant to a material issue (see People v Cass, 18 NY3d 553, 560 [2012]), and County Court did not abuse its discretion in determining that the probative value outweighed the danger of prejudice (see id.; People v Burnell, 89 AD3d at 1121). County Court further gave an appropriate limiting instruction both when the proof was presented and in its charge to the jury (see People v Dorm, 12 NY3d 16, 19 [2009]; People v Reid, 97 AD3d 1037, 1038 [2012], lv denied 19 NY3d 1104 [2012]).
Next, defendant argues that County Court erred in allowing the People to introduce evidence purporting to show defendant’s consciousness of guilt. Consciousness of guilt evidence is weak, but it “may be admissible so long as it is relevant, meaning that it has a tendency to establish the fact sought to be proved—that defendant was aware of guilt” (People v Bennett, 79 NY2d 464, 470 [1992]; see People v Cintron, 95 NY2d 329, 332-333 [2000]). Defendant was found 13 days after the shooting hiding in a vacant apartment adjoining his sibling’s residence. County Court allowed the proof after finding that its probative value outweighed its prejudicial impact. The court later restricted the extent of the People’s use in summation of the consciousness of guilt evidence and charged the jury that such evidence is often of slight value and cannot be the sole basis for a finding of guilt. We are unpersuaded that the trial court’s handling of this issue constituted reversible error (see People v Scharpf, 60 AD3d 1101, 1103 [2009], lv denied 13 NY3d 862 [2009]; People v Price, 135 AD2d 750, 750-751 [1987], lv denied 71 NY2d 972 [1988]).
The jury verdict is supported by legally sufficient evidence and is not against the weight of the evidence. When considering legal sufficiency, we view the evidence “in a light most favorable to the People and will not disturb a verdict as long as there is a Valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury’ ” (People v Blond, 96 AD3d 1149, 1151 [2012], lv denied 19 NY3d 1101 [2012], quoting People v Bleakley, 69 NY2d 490, 495 [1987]). The victim’s wife testified that her husband went outside to take pictures of the crowd, she heard someone state “this is what you get” followed by a single gunshot, and the crowd scattered as she ran outside finding her husband bleeding from his head. Several witnesses reported seeing defendant, who was visible because of his height, in the crowd and in the vicinity from where the gun was fired. One witness, Frank Me *1253 Givern, was watching from his nearby apartment and had previously seen defendant many times as someone living in the neighborhood. McGivern identified defendant as the shooter. He recalled seeing the victim start taking pictures and people in the crowd yelling at him. McGivern stated that he watched as the tallest individual in the crowd put his arm out and a flame appeared to come out of this individual’s arm as a gun was fired. The people from the crowd then began running in various directions and McGivern visually followed the tall individual who had apparently fired a gun. That individual ran near Mc-Givern’s window, and he recognized him as defendant. The evidence was legally sufficient to identify defendant as the person who fired the gun and to otherwise support the convictions.
Where, as here, a different verdict would not have been unreasonable, our weight of the evidence analysis involves “weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, while giving due deference to the jury’s credibility determinations” (People v Callicut, 101 AD3d 1256, 1259 [2012], lv denied 20 NY3d 1096 [2013]; see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Barringer, 54 AD3d 442, 443 [2008], lv denied 11 NY3d 830 [2008]). Several of the People’s witnesses had criminal histories and there were inconsistencies in some testimony. Most notably, Cruz, the witness who testified about seeing defendant previously wielding a .25 caliber handgun, had an extensive criminal record and acknowledged that he contacted police regarding defendant in order to receive favorable treatment in a pending criminal matter. Further, although McGivern initially testified that he saw defendant pull a gun out of his waist, point and shoot across the street at the victim, upon closer questioning McGivern acknowledged that he could not see the shooter’s face at the time the gun fired because the shooter’s back was toward him (but he identified him as defendant as he fled the scene) and he did not see a gun (but saw a flame appear to come out of the shooter’s arm). These weaknesses in the People’s case were amply brought out at trial and presented credibility issues for the jury. Upon weighing and considering the evidence in the record, we find that the jury’s verdict is supported by the weight of the evidence (see People v Sharpe, 70 AD3d 1184, 1185 [2010], lv denied 14 NY3d 892 [2010]).
Defendant contends that he was deprived of a fair trial by two statements made by the prosecutor during summation. In commenting upon and explaining McGivern’s delay in contacting police, the prosecutor indicated in a somewhat colorful *1254 fashion that McGivern faced the same fate as the victim if he contacted police. County Court directed the prosecutor to “tone it down” and the statement, while inartful and embellished, was otherwise a fair comment on McGivern’s testimony that he did not immediately talk to police because he had to live in the neighborhood. In a second challenged summation comment, the prosecutor stated that police were all over the case and the people they interviewed all told them that defendant was involved. Counsel objected and County Court immediately instructed the jury to disregard the statement and added that there was no such evidence at trial. Although this comment by the prosecutor was improper, County Court promptly provided a curative instruction (see People v Hendrie, 24 AD3d 871, 873 [2005], lv denied 6 NY3d 776 [2006]). Review of the prosecutor’s summation does not reveal the level or frequency of misconduct as to require reversal (see People v Weber, 40 AD3d 1267, 1268 [2007], lv denied 9 NY3d 927 [2007]; cf. People v Gorghan, 13 AD3d 908, 909 [2004], appeal dismissed 4 NY3d 798 [2005]; People v Tarantola, 178 AD2d 768, 770 [1991], lv denied 79 NY2d 954 [1992]).
Finally, defendant urges that sentencing him to the maximum period of incarceration on both counts was harsh and excessive. Although he was 18 years old when he committed these crimes and had no prior criminal record, nonetheless, defendant’s actions were senseless and callous with catastrophic consequences for the 36-year-old victim as well as his wife and three children. Finding neither an abuse of discretion nor extraordinary circumstances, we decline to disturb the sentence (see People v Smith, 41 AD3d 964, 967 [2007], lv denied 9 NY3d 881 [2007]; People v Jennings, 20 AD3d 777, 778 [2005], lv denied 5 NY3d 829 [2005]; People v Leader, 285 AD2d 823, 825 [2001], lv denied 97 NY2d 756 [2002]).
Mercure, J.E and Rose, J., concur.