*459
 
 OPINION OF THE COURT
 

 Levine, J.
 

 Defendant Kenneth Maher was convicted of counts of intentional murder and felony murder and criminal contempt in connection with the shooting death of Ann Kotel, his estranged paramour. The principal issue on appeal is whether hearsay statements of the victim concerning defendant’s prior violent acts and express or implied threats against her, were admissible as evidence-in-chief in the People’s case.
 

 The People presented other evidence that the victim and defendant were involved in an intimate relationship, living together in an apartment until an argument occurred between them on April 20,1990. After two additional incidents on April 24 and 26, Ms. Kotel contacted the police and vacated the apartment. Another altercation occurred on April 30, leading to the filing of a criminal complaint against defendant for menacing and unlawful imprisonment.
 

 After midnight on June 3, 1990, defendant parked his car in a secluded wooded area near Ms. Kotel’s new apartment. Wearing black pants, a black shirt, a black jacket and a black bandanna, and armed with a 12 gauge single-shot sawed-off shotgun, defendant waited outside Ms. Kotel’s apartment until a friend who was visiting left, at which time defendant cut the telephone wires to the building and forcibly entered her apart
 
 *460
 
 ment by smashing in a door with a baseball bat. When Ms. Hotel sought to flee to a neighbor’s apartment, defendant pursued her and forced her back into her own apartment, whereupon defendant shot her three times, killing her. Defendant was arrested 11 hours later.
 

 The People proposed to introduce certain statements of the victim made to the police and a hospital security officer concerning violent and threatening behavior of defendant on April 24, 26 and 30, 1990, as bad acts probative of defendant’s intent and motive
 
 (see, People v Molineux,
 
 168 NY 264). At the
 
 Ventimiglia
 
 hearing
 
 (People v Ventimiglia,
 
 52 NY2d 350) on the admissibility of this evidence, as well as at trial, defendant’s sole objection was that these statements violated the evidentiary rule against the admissibility of hearsay. The People’s only ground for avoiding the hearsay objection was reliance upon the theory advanced in various forms in several lower court decisions and in the Federal courts
 
 (see, e.g., Matter of Holtzman v Hellenbrand,
 
 92 AD2d 405;
 
 United States v Mastrangelo,
 
 693 F2d 269) and subsequently adopted by this Court in
 
 People v Geraci
 
 (85 NY2d 359), authorizing the introduction of an out-of-court statement of a witness whose unavailability for trial was wrongfully procured by the defendant.
 
 [1]
 

 The trial court ruled that the victim’s statements were admissible. These essentially consisted of: (1) an April 26 statement to police concerning incidents on April 24 and 26 in which defendant grabbed her, forced her to the ground and held her down, on one occasion placing his hand over her mouth; (2) an April 30 statement to a hospital security officer when she accompanied defendant to the emergency room of a local hospital, prefatory to his voluntary admission to the hospital’s psychiatric ward, following an incident on that date at the couple’s former apartment. In that statement she described his suddenly coming out of a hiding place in a closet, handcuffing her to him and, while brandishing a pistol, stating "talk to me and I won’t kill you”; and (3) a May 1 recorded telephone conversation with the police, similarly describing the events of the April 30 incident and expressing her fear that defendant would kill her.
 

 
 *461
 
 Defendant did not testify at the trial and did not contest causing Ms. Hotel’s death. Rather, he claimed that, by reason of medication for depression, he was unable to form the requisite criminal intent for the commission of intentional murder. Defendant also invoked the affirmative defense of extreme emotional disturbance (Penal Law § 125.25 [1] [a]). Defendant offered expert and other testimony supporting these defenses. The jury rejected both defenses, finding him guilty of intentional and felony murder, and of criminal contempt of an order of protection granted the victim after the April 30 incident. The Appellate Division affirmed defendant’s conviction (224 AD2d 549), upholding the admissibility of the victim’s statements under the authority of
 
 People v Geraci (supra).
 
 A Judge of this Court granted defendant leave to appeal.
 

 In our view, admitting the hearsay statements of the victim into evidence was an unwarranted expansion of
 
 People v Geraci,
 
 in effect converting a narrow departure from the hearsay rule into a categorical authority for the admissibility of victims’ statements in all homicide cases.
 

 In
 
 Geraci,
 
 we recognized an exception to the defendant’s constitutional right of confrontation as well as to the evidentiary rule against the admission of hearsay evidence upon a showing that a witness had been rendered unavailable to testify in court through the misconduct of the defendant personally, or of others on his or her behalf with the defendant’s knowing acquiescence (85 NY2d, at 366, 370,
 
 supra).
 
 We emphasized in
 
 Geraci
 
 that the exception is not based upon the inherent reliability of this class of hearsay evidence, but is essentially a rule "necessitated by the defendant’s misconduct”
 
 (id.,
 
 at 367-368). That is, it is a rule of necessity to preserve the integrity of the adversary process by "reducing the incentive [of a criminal defendant] to tamper with witnesses”
 
 (id.,
 
 at 368).
 

 Because of the weighty countervailing interests, that is, the constitutional right of confrontation and the strong New York policy for narrow treatment of exceptions to the hearsay rule
 
 (see, People v Nieves,
 
 67 NY2d 125,
 
 supra),
 
 we imposed a clear and convincing evidentiary standard of proof for the establishment of the factual basis for admitting out-of-court statements of a declarant whose unavailability was caused by the defendant
 
 (People v Geraci,
 
 85 NY2d, at 368,
 
 supra).
 

 For the very same reasons, the
 
 Geraci
 
 exception must not be expanded and applied to circumstances in which the facts giv
 
 *462
 
 ing rise to the necessity for the exception are absent. Thus, the
 
 Geraci
 
 exception cannot be invoked where, as in the instant case, there is not a scintilla of evidence that the defendant’s acts against the absent witness were motivated, even in part, by a desire to prevent the victim from testifying against him in court. Application of the
 
 Geraci
 
 exception is even more anomalous where, as here, it is invoked against a defendant in the very trial in which the charge is murder of the unavailable witness. Thus, application of the
 
 Geraci
 
 rule not only would swallow up the narrowly drawn traditional dying declaration hearsay exception, but also would require the trial court in a
 
 Sirois
 
 hearing
 
 [2]
 
 to decide the ultimate question for the jury in the same case, i.e., whether the defendant caused the victim’s death.
 

 Although the victim’s statements should not have been admitted into evidence at defendant’s trial, we conclude that the error was harmless. Since the only objection made against their introduction was the violation of a rule of evidence, the harmless error standard to be applied is whether there is a
 
 significant probability
 
 that the jury would have acquitted the defendant of intentional murder had the victim’s statements not been admitted
 
 (see, People v Crimmins,
 
 36 NY2d 230, 242-243;
 
 see also, People v Rice,
 
 75 NY2d 929, 932).
 

 We find no such probability here. Defendant did not contest causing the victim’s death. The evidence of defendant’s conduct leading to the murder strongly negated his claim of drug-induced lack of intent and his affirmative defense of extreme emotional disturbance. He purchased the shotgun shortly before June 3, sawed off part of the barrel, assembled approximately 20 rounds of ammunition, a knife, bungee cord and black gloves. He dressed entirely in black, parked his car near the victim’s home in a secluded area and waited until she was alone. He then cut the telephone wires to the building to prevent any effort to summon rescuers. When she sought to escape, he pulled her back into the apartment and shot her three times with a shotgun requiring reloading and individual cocking each time before it could be fired. All of this conduct reflected a careful plan to take the victim’s life because of her rejection of him and her complaints to the authorities, rather than a spontaneous act committed mindlessly or in a largely uncontrollable, emotional fever.
 

 
 *463
 
 Moreover, the victim’s statements concerning defendant’s prior violent acts and threats were essentially cumulative of admissions defendant made to her or others. Thus, defendant wrote a letter to the victim immediately following the April 26 incident apologizing for having "grabbed” her, as she described to the police. Additionally, defendant admitted to a hospital security officer on April 30 that earlier in the evening, he handcuffed himself to her and told her to "talk to me and I won’t kill you” — the exact words described by the victim to the police. The security officer also found the pistol, previously described by the victim, in defendant’s car and turned it over to the police.
 

 Lastly, as to the impact of introduction of the victim’s statements, the proffered psychiatric basis for defendant’s claimed extreme emotional disturbance was undermined by his expert’s testimony that she was unaware of aspects of defendant’s careful preparation for the murder. Moreover, the victim’s rejection hardly fulfilled the objective element of the extreme emotional disturbance affirmative defense, its "reasonableness” as an explanation or excuse for the emotional state under the circumstances as perceived by the defendant (see, Penal Law § 125.25 [1] [a];
 
 People v Casassa,
 
 49 NY2d 668, 678,
 
 cert denied
 
 449 US 842). Thus, in our view, any emotional disturbance of a thwarted lover in this case was unlikely to have induced "the finder of fact [to exercise] the discretionary power to mitigate the penalty when presented with a situation which, under the circumstances, appears to them to have caused an understandable weakness in one of their fellows”, as intended by the Legislature in enacting the defense
 
 (People v Casassa, supra,
 
 at 680).
 

 We also conclude that the error, if any, was harmless in admitting into evidence the recording of defendant’s May 1, 1990 telephone conversation with the police regarding the April 30 altercation. As defendant pointed out in his memorandum of law, submitted in support of his pretrial omnibus motion, the statements in that conversation were largely exculpatory of any existing intent to cause the victim’s death.
 

 The remaining contention of the defendant relates to the trial court’s charge to the jury on his affirmative defense of extreme emotional disturbance. As is undisputed by defendant, the trial court extensively and accurately instructed on the subjective and objective elements of the defense and upon the shifted burden of proof
 
 (see,
 
 Penal Law § 125.25 [1] [a];
 
 People v Casassa, supra).
 
 However, in attempting to paraphrase the def
 
 *464
 
 inition of the objective element of the affirmative defense it properly gave the jury, the court adopted a characterization of the concept of the defense in
 
 People v Casassa
 
 (49 NY2d, at 680-681,
 
 supra),
 
 and charged the jury: ”[t]hat is, the killing of Ann Hotel was not the result of the defendant’s malevolence, but rather an understandable human response deserving of mercy.”
 

 Standing alone, a reference to the absence of "malevolence” in a charge on extreme emotional disturbance could be misleading to a jury because it might wrongly suggest that an absence of intent to kill was necessary to make out that defense, or that the defense was inconsistent with extremely violent homicidal conduct
 
 (cf., People v Moye,
 
 66 NY2d 887). In addition, an indication that this defense may be found where defendant’s actions were an "understandable human response deserving of mercy” could, under certain circumstances, prompt the jury to consider factors not contemplated by the statute when weighing the evidence presented as to both the subjective and objective elements. Thus, the statement in question is disapproved and should not be used in jury instructions on the affirmative defense of extreme emotional disturbance. Here, however, the objectionable language was immediately followed by correct instructions that the defense could be adopted by the jury in its verdict notwithstanding defendant’s intent to kill, and, as previously noted, the entire instructions copiously informed the jury on the accurate meaning of the defense and of all of the factors to be taken into account. Thus, when considered as a whole, the charge was correct and insured that the jury was not misled.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order affirmed.
 

 [1]
 

 . It is conceded by the People that the hearsay statements of the victim admitted as evidence in this case do not fit into any traditionally recognized New York exception to the hearsay rule. For the first time on appeal, the People also urge this Court to uphold the admissibility of these statements under a more "amorphous 'reliability’ test”
 
 (see,
 
 discussion in
 
 People v Nieves,
 
 67 NY2d 125, 131). Inasmuch as the People failed to raise this issue before the trial court, it is not preserved for our review.
 

 [2]
 

 . A
 
 Sirois
 
 hearing is
 
 the
 
 preliminary evidentiary hearing before the
 
 trial
 
 court to determine whether the factual elements for applying the exception have been established (see,
 
 People v Geraci,
 
 85 NY2d, at 363, n 1,
 
 supra).