[965 NE2d 913, 942 NYS2d 411]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALAA AGINA, Respondent.

Argued January 5, 2012; decided February 16, 2012

**POINTS OF COUNSEL**

*Richard A. Brown, District Attorney*, Kew Gardens (*Karen Wigle Weiss* and *John M. Castellano* of counsel), for appellant. The Appellate Division erred in holding that evidence of defendant's commission of a prior assault involving a similar distinctive modus operandi was inadmissible to prove the identity of the assailant. (*People v Beam*, 57 NY2d 241; *People v Allweiss*, 48 NY2d 40; *People v Condon*, 26 NY2d 139; *People v Bleakley*, 69 NY2d 490; *People v D'Alessandro*, 13 NY3d 216; *People v Crimmins*, 36 NY2d 230; *People v Gillyard*, 13 NY3d 351; *People v Arafet*, 13 NY3d 460; *People v Lewis*, 69 NY2d 321; *People v Hudy*, 73 NY2d 40.)

*Appellate Advocates*, New York City (*Lisa Napoli* and *Lynn W.L. Fahey* of counsel), for respondent. When respondent's wife described an assault that lasted for many hours and respondent admitted arguing with her during that period and challenged only her credibility, the Appellate Division correctly held that a former wife's testimony that respondent assaulted her was inadmissible to prove his identity in the instant case. (*People v Molineux*, 168 NY 264; *People v Rojas*, 97 NY2d 32; *People v Condon*, 26 NY2d 139; *People v Arafet*, 13 NY3d 460; *People v Alvino*, 71 NY2d 233; *People v Vargas*, 88 NY2d 856; *People v Fitzgerald*, 156 NY 253; *People v Allweiss*, 48 NY2d 40; *People v Jackson*, 39 NY2d 64; *People v Resek*, 3 NY3d 385.)

**OPINION OF THE COURT**

SMITH, J.

Under the so-called "identity" or "modus operandi" exception to the *Molineux* rule, evidence of an uncharged crime that has distinctive characteristics in common with the crime for

which the defendant is on trial may be admissible unless the defendant's identity as the person who committed the act in question is conclusively established by other evidence. In this case, defendant admitted that he was present at the time when the victim said the acts occurred, and did not accuse anyone else of committing them, but denied that he did what he was accused of doing. We hold that on these facts his identity was not so conclusively established as to render evidence of a prior crime inadmissible.

## I

The complainant, defendant's wife, testified to a brutal attack that began on the late afternoon of March 28, 2004 and continued until the following morning. According to her testimony, defendant accused her of cheating on him, tore off her clothes, jumped on her, tied a purse strap around her neck and swung her around; then he tied a rope around her neck, wrists and ankles, taped her mouth, put a bag over her head several times for increasingly long periods while talking to her about how long it would take a person to suffocate, punched her, head butted her, stomped on her, made a small cut near her eye with a knife, forced her to take pills and wash them down with rubbing alcohol, and burned her breast with a lighter. He finally released her, and the couple remained together for most (though not all) of the time during the next four days. On April 2, while defendant and the complainant were shopping, the complainant signaled to another shopper and asked her to call the police.

Pictures taken of the complainant on April 2 were admitted into evidence: they show significant injuries on her neck, arms, hip and breast. A nurse who examined the complainant on April 2 testified that the mark on her breast came from a burn.

At a *Molineux* hearing held before trial, the People asked to present to the jury the testimony of Lisa H., defendant's ex-wife, about an incident 15 months before the one at issue in this case. The People's application was granted over defendant's objection, and Lisa testified at trial that defendant accused her of cheating on him, threatened her with a knife, grabbed her, choked her, tied her wrists and ankles, told her she was going to die and inserted a lighter (evidently unlit) into her vagina.

Defendant was convicted of attempted first-degree assault, second-degree assault and unlawful imprisonment. The Appellate Division reversed the judgment of conviction, concluding

that Lisa's testimony should not have been admitted. The Appellate Division believed that defendant's identity was not in issue at trial, and that therefore Lisa's testimony served no purpose except "to enhance the credibility of the complainant" (*People v Agina*, 74 AD3d 831, 834 [2d Dept 2010]). A Judge of this Court granted leave to appeal, and we now reverse.

## II

Under the familiar rule of *People v Molineux* (168 NY 264 [1901]), evidence of uncharged crimes is inadmissible where its only relevance is to show defendant's bad character or criminal propensity (*see People v Arafet*, 13 NY3d 460, 464-465 [2009]; *People v Alvino*, 71 NY2d 233, 241 [1987]). Also familiar is the identity or modus operandi exception: evidence of a similar crime may be admissible to identify the defendant where "the similarities [are] unusual enough to compel the inference that the defendant committed both" (*People v Beam*, 57 NY2d 241, 251 [1982]). Where this test is met, evidence of the uncharged crime may be admitted "unless the defendant's identity is *conclusively* established" by other evidence (*People v Condon*, 26 NY2d 139, 142 [1970]).

We assume for present purposes that defendant's assault on his ex-wife, Lisa, was similar enough to the alleged assault on his current wife, the complainant, to trigger the identity exception. That is an issue the Appellate Division did not reach, and on which we express no opinion. The issue before us is whether defendant's identity was so conclusively established as to prevent the exception from being invoked. We hold that it was not.

The evidence that we have summarized, the substance of which was known to the trial judge when he decided the *Molineux* application, was not conclusive in establishing defendant's identity as the person who attacked his wife. While the existence of the complainant's injuries was proved by photographs, nothing in the People's case except the complainant's testimony (apart from the evidence of the uncharged crime) pointed to defendant as the person who injured her. Since the jury might doubt the complainant's word, this evidence was not conclusive. It is true, as the dissent says, that there was no possibility of *mistaken* identity (dissenting op at 606). But the jury could have believed that the complainant's identification was intentionally false, as defense counsel's opening suggested, in language quoted by the dissent: "she is not telling the truth" (dissenting op at 607).

At the time of the *Molineux* hearing the trial judge also knew defendant's version of the facts. Defendant had testified at a previous hearing on whether he had violated the conditions of his probation. The People do not claim, and we do not assert, as the dissent suggests, that his testimony "opened the door" to otherwise inadmissible evidence (dissenting op at 606 and 606-607 n). For the reasons we have explained, the proof of identity, in the absence of defendant's testimony, was not conclusive. But defendant claims that his testimony removed identity as an issue in the case. We disagree.

Defendant testified at the probation violation hearing (and later at trial) that he had been with the complainant, as she said, at their home on the night of March 28-29, and that they had been largely together from then until April 2. He testified, however, that he had spent the day of March 28 with another woman, and did not return home until 9:30 or 10:00 in the evening, thus contradicting the complainant's testimony that they had been together all day, arguing, and that the violent encounter began in the late afternoon. At the violation hearing (though not at trial) the other woman testified and corroborated what defendant said, thus giving him a partial alibi.

Defendant testified that, after he returned home on March 28, he and the complainant had an argument, in which the complainant pushed him and he "tried to stop her by holding her." He denied assaulting her in any way; he said he did not hit her, kick her, tie her up, cut her with a knife or threaten to do so, or burn her. He said that he observed no marks on the complainant, and he could not explain how the marks that were in the photographs got there. Asked on cross-examination if the complainant was "into self-mutilation . . . as far as you know," he replied: "[a]ll I can tell you is that [the complainant] is a very angry person."

In short, defendant admitted being present during some of the time when the complainant said her injuries were inflicted, and he did not testify that anyone other than he inflicted them or had an opportunity to do so. But he denied that he did it, and even seemed to suggest that the complainant might have deliberately harmed herself. It may well be that defendant's testimony was hard to believe; but he asked the jury to believe it, and in doing so he did not concede—indeed he actively disputed—his identity as the person who committed this crime. That is the "identity" that is relevant for purposes of the identity exception to *Molineux*: the identity of the defendant as

the person who did the acts, not just as someone who was present at the scene.

We therefore conclude that the Appellate Division erred in holding defendant's identity to be "conclusively established" for *Molineux* purposes. The case must return to the Appellate Division, so that it can decide whether the identity exception is applicable to these facts, and resolve any other open issues.

Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for consideration of the facts and issues raised but not determined on the appeal to that court.

CIPARICK, J. (dissenting). Because I agree with the Appellate Division that identity is not an issue in this case and that defendant's ex-wife's testimony concerning his abuse of her was admitted, not to establish identity through a unique modus operandi, but to establish propensity, it was an abuse of discretion to allow that evidence to be admitted on the People's direct case. Therefore, I respectfully dissent.

It is axiomatic that evidence of uncharged crimes is inadmissible where "its only purpose is to show bad character or propensity towards crime" (*People v Arafet*, 13 NY3d 460, 464-465 [2009]). Here, the People argue that the evidence that defendant had assaulted his ex-wife in a unique and similar manner was utilized for the purpose of establishing identity. Establishing identity, of course, is one of the exceptions to the general rule that uncharged prior bad acts are inadmissible (*see People v Molineux*, 168 NY 264, 293 [1901]).

However, in *Molineux* we cautioned against liberal use of the identity exception.

> "The reason for this is obvious. In the nature of things there cannot be many cases where evidence of separate and distinct crimes, with no unity or connection of motive, intent or plan, will serve to legally identify the person who committed one as the same person who is guilty of the other. The very fact that it is much easier to believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime proves the dangerous tendency of such evidence to convict, not upon the evidence of the crime charged, but upon the superadded evidence of the previous crime. Hence our courts have been proverbially

careful to subject such evidence to the most rigid scrutiny, and have invariably excluded it in cases where its relevancy and competency was not clearly shown" (168 NY at 313-314).

Here, complainant was defendant's wife and the alleged assault occurred over a period of 12 hours. This was not a case where there was any possibility of mistaken identity. The majority asserts that, by maintaining his innocence, defendant put the issue of identity into play because "identity [was not] *conclusively* established" by other evidence (*see* majority op at 603, quoting *People v Condon*, 26 NY2d 139, 142 [1970]). However, the facts of this case and the facts of *Condon* are readily distinguishable. In *Condon*, there was a single eyewitness to the crime, who did not personally know the defendant. During the trial, the eyewitness was thoroughly questioned concerning his identification of the defendant. We held that "since the single eyewitness was extensively impeached, defendant's identity was not conclusively established" (*Condon*, 26 NY2d at 142). Furthermore, we noted that defendant "maintained throughout the trial that he was the victim of mistaken identity. Thus, identity was still very much in issue" (*id.* n). There is no comparable claim of mistaken identity in this case. Complainant testified that it was defendant, her husband, who subjected her to abuse for 12 continuous hours.

Similarly, in *People v Beam* (57 NY2d 241 [1982]), also relied upon by the majority, "the assailant's identity remained in dispute. It was put into issue by the defense cross-examination of the victim which raised questions concerning the validity of his identification of the defendant" (*id.* at 251). By contrast, in this case, the cross-examination of complainant focused on inconsistences in her testimony and at no time was her identification of her husband as her assailant questioned.

While defendant's testimony at trial that he did not know the cause of complainant's injuries, never saw any bruises or burn marks and did not perpetrate any of the acts that complainant accused him of doing may arguably have opened the door for the admission of prior bad acts, we need not opine on that as the evidence was admitted during the People's direct case, a clear *Molineux* violation.*

---

* The majority relies heavily on the fact that the trial court, while considering the *Molineux* application, was aware of what defendant might say at trial

It is clear, in this case, that the defense was not one of mistaken identity but rather that of attacking the credibility of complainant. Indeed, in his opening statements to the jury, defense counsel stated:

> "The central question here is not if the complainant was injured, or if the complainant suffered bruises to her body. The question here is, did [defendant] cause those bruises with intent to cause a serious physical injury as defined under the law.

> "Now, the complainant will come and tell her version of what happened. But the evidence and the absolute lack of evidence will show that she is not telling the truth."

Furthermore, the People's summation did not argue that the ex-wife's testimony was admitted to demonstrate that complainant was certain as to the identification of defendant but to bolster complainant's testimony and show that defendant has a propensity to abuse women. In fact, the People stated that "[the ex-wife] comes in and says two years ago for the same reason that he did it to her, he also did it to me. That's why she's here." The People essentially admit that the ex-wife was not there to prove defendant's identity but defendant's propensity to beat up his wives. The People went on to state that if defendant suspects someone of cheating on him "[h]e ties them up. He tortures them." This clearly is not an argument regarding the identity of defendant.

> "In truth, it is simply another . . . way of saying if defendant did it once to [his ex-wife], he would do it again; therefore he probably abused [complainant]. Since this line of reasoning is nothing more than a disguised propensity argument, it falls within the core of what the *Molineux* rule prohibits and should therefore have been excluded" (*People v Hudy*, 73 NY2d 40, 56 [1988] [internal quotation marks omitted]).

In short, this is not a case where identity is an issue. In fact, defendant's identity was conclusively established by complainant's testimony. The majority today crafts a rule whereby any

---

since he had previously testified regarding the incident at a violation of probation hearing. This reliance is misplaced as defendant could have chosen to exercise his right not to give testimony on his own behalf during trial.

time a defendant does not stipulate to identity as the perpetrator of the acts complained of—which is very unlikely—and proclaims innocence, he or she is putting identity at issue allowing for evidence of prior crimes or similar bad acts to be admitted. This is precisely the danger we have repeatedly warned against in *Molineux* and its progeny.

Accordingly, I would affirm the order of the Appellate Division and order a new trial excluding the prior crimes evidence.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Judge JONES concurs.

Order reversed, etc.