■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALAA AGINA, Appellant. [959 NYS2d 275]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Hollie, J.), rendered November 21, 2005, convicting him of attempted assault in the first degree, assault in the second degree, and unlawful imprisonment in the first degree, upon a jury verdict, and imposing sentence. By decision and order dated June 1, 2010, this Court reversed the judgment and ordered a new trial (*see People v Agina*, 74 AD3d 831 [2010]). On February 16, 2012, the Court of Appeals reversed the decision and order of this Court and remitted the matter to this Court for consideration of the facts and issues raised but not determined on the appeal to this Court (*see People v Agina*, 18 NY3d 600 [2012]). Justice Miller has been substituted for the late Justice Fisher (*see* 22 NYCRR 670.1 [c]).

Ordered that, upon remittitur from the Court of Appeals, the judgment is reversed, on the facts and as a matter of discretion in the interest of justice, and a new trial is ordered.

According to the testimony of the complainant, who was the defendant's wife, the defendant, in a fit of jealous rage, assaulted her over the course of a 12-hour period. After a jury trial, the defendant was convicted of attempted assault in the first degree, assault in the second degree, and unlawful imprisonment in the first degree. In a decision and order dated June 1, 2010, this Court determined that the defendant's challenge to the legal sufficiency of the evidence with respect to his conviction of attempted assault in the first degree was unpreserved for appellate review and, in any event, the evidence was legally sufficient (*see People v Agina*, 74 AD3d 831, 832 [2010]). Moreover, this Court found that the verdict of guilt on that count was not against the weight of the evidence (*see id.* at 832). Nevertheless, this Court reversed the conviction and ordered a new trial on the ground that the defendant was deprived of his right to a fair trial as a result of the Supreme Court's improper admission of evidence of a prior crime pursuant to the identity exception to the *Molineux* rule (*see People v Molineux*, 168 NY 264, 293 [1901]), concluding that identity was not an issue in the case (*see People v Agina*, 74 AD3d at 833-834). On February 16, 2010, the Court of Appeals reversed the decision and order of this Court, concluding that this Court erred in holding the defendant's identity to be "conclusively established" for *Molineux* purposes, and remitted the matter to this Court to determine whether the identity exception is applicable to these facts, and to resolve any other open issues (*People v Agina*, 18 NY3d 600, 605 [2012]). We now determine that, although the evidence of the prior crime was probative on the is-

sue of identity, the Supreme Court improvidently exercised its discretion in permitting the People to present this evidence to the jury because the probative value of the evidence was outweighed by its unfair prejudicial effect.

At a *Molineux* hearing held before trial, the People asked to present to the jury, during their case-in-chief, the testimony of Lisa H., the defendant's former wife, regarding an incident that allegedly occurred 15 months before the one at issue in this case. At the time of the People's application, the Supreme Court was aware that the defendant's position was that while he and the complainant were together during the relevant time period, they had a mere argument; the defendant denied assaulting or threatening the complainant in any way. The People's *Molineux* application was granted, over defense counsel's objection. As pertinent here, defense counsel argued that "the underlying facts of the bad acts are just so overwhelmingly prejudicial that the defendant would not be able to have a fair trial." In response, the court stated that it would give the jury a curative instruction as to how the *Molineux* evidence was to be considered.

At trial, the complainant, the defendant's wife, testified that the defendant repeatedly accused her of cheating on him, removed her clothing, tied a purse string around her neck, and swung her around until she lost consciousness. The complainant further testified that the defendant tied a rope around her neck, wrists, and ankles, taped her mouth, placed a plastic shopping bag over her head several times for increasingly long periods while talking to her about how long it would take a person to suffocate, punched her, head-butted her, stomped on her, made a small cut near her eye with a knife, forced her to take pills and drink rubbing alcohol, poured cooking oil on her body, and burned her breast with a cigarette lighter. Throughout this ordeal, which lasted about 12 hours, the defendant told the complainant that if she told him with whom she had cheated, he would not get mad.

Lisa H., the defendant's former wife, testified that the two were married in 1997 and divorced in 1999 or 2000. In December 2002, the defendant was upset and angry because he believed that Lisa H. had cheated on him. While inside her apartment on the evening of December 8, 2002, the defendant hit her in her torso and stomach, punched her in the chin, placed a kitchen knife against her neck, and threatened to kill her. The next morning, the defendant choked Lisa H. until she lost consciousness. He bound her wrists and ankles with shoelaces and inserted a cigarette lighter into her vagina. Following Lisa H.'s

testimony, the Supreme Court instructed the jury that her testimony was adduced by the People for the sole purpose of showing that "the behavior or method or procedure used by the defendant against [Lisa H. and the complainant was] sufficiently unique to tend to establish a common plan or scheme."

"Evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past" (*People v Alvino*, 71 NY2d 233, 241 [1987]; *see People v Arafet*, 13 NY3d 460, 464 [2009]). This "rule reflects the importance of an accused being judged only on relevant, probative evidence, rather than on the basis of propensity to commit crime" (*People v Gillyard*, 13 NY3d 351, 355-356 [2009]). Generally, evidence of other crimes is competent to prove the specific crime charged when it tends to establish "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial" (*People v Molineux*, 168 NY at 293). This list is "merely illustrative and not exhaustive" (*People v Rojas*, 97 NY2d 32, 37 [2001]).

The identity exception to the *Molineux* rule "is used in limited circumstances, when the defendant employs some unique, unusual, or distinctive *modus operandi* in an uncharged crime that is relevant to proving his identity as the perpetrator of the crime charged" (*People v Mateo*, 93 NY2d 327, 332 [1999]). "[E]vidence of a similar crime may be admissible to identify the defendant where the similarities [are] unusual enough to compel the inference that the defendant committed both. Where this test is met, evidence of the uncharged crime may be admitted unless the defendant's identity is conclusively established by other evidence" (*People v Agina*, 18 NY3d at 603 [emphasis, citations, and internal quotation marks omitted]). Here, the defendant's alleged assault on Lisa H. was similar enough to the alleged assault on the complainant to compel the inference that the defendant committed both (*see People v Saunders*, 71 AD3d 1058, 1059 [2010]; *People v Cornish*, 280 AD2d 552, 553 [2001]; *People v Balazs*, 258 AD2d 658, 659 [1999]). Furthermore, the Court of Appeals has determined that, based upon the information before the trial judge, the identity of the defendant as the perpetrator of the instant crimes was not "conclusively established" for *Molineux* purposes (*People v Agina*, 18 NY3d at 605). Consequently, the evidence of the defendant's prior crime

allegedly committed against Lisa H. was not automatically barred.

However, the final step in determining the admissibility of the evidence of the defendant's prior crime "turns on the discretionary balancing of the probative value and the need for the evidence against the potential for delay, surprise and prejudice" (*People v Alvino*, 71 NY2d at 242; *see People v Gillyard*, 13 NY3d at 355-356; *People v Sayers*, 64 AD3d 728, 732 [2009]). Here, the Supreme Court improvidently exercised its discretion in permitting the People to present evidence of the defendant's alleged attack on Lisa H. because the unfair prejudice to the defendant far exceeded the probative value of that evidence. The charges in this case are all based upon violent acts which the complainant, the defendant's wife, alleged that the defendant committed against her, whereas the defendant denied that he assaulted the complainant. At the time of the *Molineux* application, the complainant was to be called as a witness for the People. During the complainant's testimony, the trier of fact would be given the opportunity to assess the complainant's credibility as to the identity of her assailant. "[T]wo starkly contrasting scenarios were presented, with only credibility in issue" (*People v Vargas*, 88 NY2d 856, 858 [1996]). Thus, the probative value of the defendant's prior misconduct on the issue of identity was relatively low in comparison to the high risk of unfair prejudice to the defendant. In this regard, the evidence of the defendant's crime was unfairly prejudicial to the defendant, as it buttressed the complainant's credibility by encouraging the jury to infer that he had a propensity to commit violent acts against women with whom he was intimate and diverted the jury's attention from the actual crime charged (*see id.* at 858; *People v Hudy*, 73 NY2d 40, 56 [1988]; *People v Reilly*, 19 AD3d 736, 737 [2005]; *People v Flemings*, 6 AD3d 626, 627 [2004]).

The Supreme Court's error was compounded by the court's inaccurate and confusing instruction to the jury that Lisa H.'s testimony was admissible to show that the defendant's prior misconduct was "sufficiently unique to tend to establish a common plan or scheme," rather than to establish the identity of the complainant's assailant. The court's errors were further exacerbated by the prosecutor's summation. For example, the prosecutor argued in summation that Lisa H.'s testimony showed that the defendant has a propensity to abuse women. Specifically, the prosecutor stated that "Lisa [H.] comes in and says two years ago for the same reason that he did it to her, he also did it to me. That's why she's here." In addition, the prosecutor stated that if the defendant suspects someone of cheating on him, "[h]e ties them up. He tortures them."

Finally, the erroneous admission of the evidence of the defendant's prior crime was not harmless. Assuming that there was overwhelming evidence of guilt, we cannot conclude that there was no significant probability that the jury would have acquitted the defendant had it not been for the error, as compounded by the prosecutor's summation remarks (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]; *People v Wilkinson*, 71 AD3d 249, 257 [2010]).

Accordingly, the judgment of conviction is reversed, and a new trial is ordered.

In light of our determination, the defendant's remaining contentions, including those raised in his pro se supplemental brief, have been rendered academic. Angiolillo, J.P., Leventhal, Lott and Miller, JJ., concur.