# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**318**
**KA 15-01507**
PRESENT: SMITH, J.P., LINDLEY, CURRAN, AND TROUTMAN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

RONALD MEADOW, DEFENDANT-APPELLANT.

---

LAW OFFICES OF ANDREW J. FRISCH, NEW YORK CITY (ANDREW J. FRISCH OF COUNSEL), AND CUTI HECKER WANG LLP, FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (Anthony F. Aloi, J.), rendered December 12, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted.

Memorandum: On appeal from a judgment convicting him following a jury trial of murder in the second degree (Penal Law § 125.25 [1]), defendant contends that County Court erred in admitting hearsay testimony from multiple prosecution witnesses, thereby depriving him of a fair trial. The witnesses in question testified to statements the victim made to them concerning defendant's prior violent and threatening behavior toward the victim. We agree with defendant that the court erred in allowing that testimony over his objection, and we therefore grant defendant a new trial.

On March 6, 1985, the victim's body was found face-first on the floor of her Syracuse apartment with her hands tied behind her back and a cloth belt around her neck. The Medical Examiner determined that she had been strangled to death sometime between 7:00 p.m. on March 4, 1985 and 3:10 a.m. the next morning. Although the apartment had been ransacked, there were no signs of a forced entry, and the victim had not been sexually assaulted. The police questioned several suspects, including defendant, the victim's estranged husband. The couple had separated approximately six months earlier and, according to several of the victim's friends and relatives, the victim said that defendant had beaten her in the past and threatened to kill her. Defendant denied killing the victim and offered an alibi. The investigation thereafter stalled, and defendant moved to Georgia.

Although the police continued to view defendant as a suspect, he

was not arrested until nearly 30 years later, after a Y-STR DNA analysis was performed on a small amount of DNA material found under the victim's fingernails, which had been clipped and preserved during the autopsy.  The DNA expert who conducted the testing concluded that defendant's Y-STR profile was consistent with the DNA found under the victim's fingernails, and that neither defendant nor any of his paternal relatives could be excluded as the source of the DNA.  According to the expert, one in every 4,600 males chosen at random would have Y-STR DNA consistent with that found under the victim's fingernails.  Based on the new evidence, defendant was returned to Syracuse from Georgia and charged with murder in the second degree.

Prior to trial, defendant moved in limine to preclude the People from calling various witnesses to testify that the victim had told them that defendant had beaten her in the past and threatened to kill her.  According to defendant, such testimony was not admissible under *People v Molineux* (168 NY 264), and, in any event, constituted inadmissible hearsay.  In response, the People argued that the evidence was relevant to "defendant's intent, motive, and identity as [the] killer," and it was admissible because it would "provide the jury with background information regarding the strife-ridden relationship between defendant and the victim."  With respect to defendant's hearsay contention, the People asserted that the evidence was admissible under the "state of mind exception" to the rule against hearsay.  Following a hearing, the court denied defendant's motion in limine, ruling that "in a domestic violence type of case, or other cases for that matter, that kind of testimony is allowable if it's relevant to the issue of intent, motive, [or] identity."

During the trial, consistent with the court's ruling, the victim's aunt testified that the victim told her in 1979—six years before the murder—that defendant "handcuffed her to a chair and left her there for a little while because he didn't want her to go or do something."  The victim's sister testified that she, too, heard the victim say that defendant had handcuffed her.  The sister further testified that the victim told her two or three times that defendant had beaten her, and that the victim also said that she was having trouble sleeping because defendant "had threatened to kill her if she didn't come back to him."  Finally, a friend of the victim testified that the victim told her over dinner one night that defendant had threatened to kill her.

Defendant repeatedly objected to the above testimony on hearsay grounds, among others, but the court overruled the objections.  The court instructed the jurors, however, that the "evidence was not offered and it is not allowed by this Court and must not be considered for the purpose of proving that the defendant, Ron Meadow, had the propensity or predisposition to commit the crimes charged in this case."  The court repeated that instruction each time it overruled defendant's hearsay objections.  During the charge conference, defense counsel asked the court to instruct the jury that it should not consider the victim's out-of-court statements regarding defendant's prior bad acts for the truth of the matters asserted therein.  The People opposed the request, and the court denied it.  After

deliberating for more than six hours, the jury convicted defendant of intentional murder, and the court later sentenced him to 25 years to life in prison.

As a preliminary matter, we reject the People's contention that defendant failed to preserve his hearsay contention for our review. As noted, defendant moved in limine to preclude the subject testimony on hearsay grounds, and then objected to the testimony at trial on that same ground. Defendant thereby afforded the court ample "opportunity to correct any error in the proceedings below at a time when the issue can be dealt with most effectively" (*People v Lopez*, 71 NY2d 662, 665; *see* CPL 470.05 [2]).

With respect to the merits, it is well settled that "[o]ut-of-court statements offered for the truth of the matters they assert are hearsay and 'may be received in evidence only if they fall within one of the recognized exceptions to the hearsay rule, and then only if the proponent demonstrates that the evidence is reliable' " (*Nucci v Proper*, 95 NY2d 597, 602, quoting *People v Brensic*, 70 NY2d 9, 14). Here, there is no dispute that the statements of the victim at issue were made out of court, and the People do not contend that an exception to the hearsay rule applies. Instead, the People contend that the statements are not hearsay because they were not offered for the truth of the matters asserted therein. We reject that contention. In our view, the statements were offered to establish that defendant had, in fact, physically abused the victim and threatened to kill her. Indeed, when defense counsel asked the court to instruct the jury that the statements should not be considered for the truth of the matters asserted, the People opposed the request, and the court denied it. Moreover, during his opening and closing statements, the prosecutor used the statements for the truth of the matters asserted. For example, the prosecutor asserted that, following her separation from defendant, the victim "began to disclose certain things to members of her family. Things that she had kept to herself for a number of years. She began to talk about the beatings that she suffered from this defendant. The controlling behavior and conduct that he exhibited. And when she finally got her freedom and an apartment of her own and was anxiously awaiting the start of her life, she finally disclosed that, *in fact*, on more than one occasion the defendant had threatened to kill her" (emphasis added). Similarly, during his summation, the prosecutor stated that "[t]he man who did it was the man who said that he was going to do it." As the statements of the prosecutor illustrate, he assumed the truth of the statements attributed to the victim and used them to argue that defendant committed the murder.

In addition, we note that the court, in its final instructions to the jury, stated that there was "evidence in this case that the defendant made certain alleged threats to kill his wife during the marriage and that he had restrained her by tying her or handcuffing her, and there has been other testimony as well regarding and describing the nature of the relationship during the marriage." That instruction suggested to the jury that the hearsay statements at issue were offered for the truth of the matters asserted therein. Although

the court instructed the jurors that such evidence "was not offered and must not be considered for the purpose of proving that the defendant had a propensity or predisposition to commit the crime of murder in the second degree," that did not address the hearsay problem.  Again, the court refused to instruct the jury that it should not consider the subject hearsay statements for the truth of the matters asserted.

Citing *Molineux* and other like cases, including *People v Alvino* (71 NY2d 233), the People argue that evidence of defendant's prior threats and physical abuse of the victim were highly relevant for various nonhearsay purposes, such as establishing background information, revealing the state of mind of the victim and defendant, and demonstrating his motive and intent to kill the victim.  As defendant correctly points out, however, there is no *Molineux* exception to the rule against hearsay.  It may be true that evidence that defendant beat and threatened to kill the victim is admissible under a *Molineux* theory, but such evidence must still be in admissible form.  For instance, a witness could testify that he or she witnessed defendant assault the victim, or heard defendant threaten the victim.  That is not hearsay.  It is hearsay, however, for a witness to testify that someone else told him or her that defendant beat or threatened the victim.

The People rely on *People v Bierenbaum* (301 AD2d 119, *lv denied* 99 NY2d 626), where, as one trial court has noted, the First Department "essentially creates or recognizes an exception to the hearsay rule which would permit hearsay evidence in domestic violence prosecutions as 'background information' " (*People v Harris*, 15 Misc 3d 994, 1003).  Neither we nor the Court of Appeals has recognized a so-called "background exception" to the hearsay rule in criminal cases arising out of incidents of domestic violence, and we decline to do so here.  In fact, *Bierenbaum* appears to be inconsistent with *People v Maher* (89 NY2d 456).  In that case, the defendant was charged with killing his estranged paramour and the trial court permitted prosecution witnesses to testify about statements made to them by the victim concerning the defendant's violent and threatening behavior.  The Court of Appeals held that the testimony regarding the victim's out-of-court statements constituted inadmissible hearsay.  Relying on *Maher*, we reached a similar conclusion in *People v Harvey* (270 AD2d 959, *lv denied* 95 NY2d 835, *lv dismissed* 95 NY2d 853), ruling that "the court erred in permitting the People to introduce the statements of decedent to third parties that on previous occasions defendant physically abused her" (*id.* at 960).  We perceive no reason in the record to reach a different conclusion here.

The question thus becomes whether the error was harmless.  "Under the standard applicable to nonconstitutional errors, an error is harmless if the proof of defendant's guilt is overwhelming and there is no significant probability that the jury would have acquitted defendant had the error not occurred" (*People v Williams*, 25 NY3d 185, 194; *see People v Crimmins*, 36 NY2d 230, 242).  Here, it cannot be said that the proof of guilt was overwhelming.  There were no eyewitnesses, and defendant, when interrogated at length by the

police, consistently denied his guilt.  Although defendant admitted to the police that he had physically abused the victim at times during the marriage, he did not admit to having threatened to kill her.  We note that the police did not arrest defendant until almost 30 years after the murder was committed, evidently concluding that there was not enough evidence to charge him.  The only new evidence that the police had when defendant was arrested were the DNA test results, which, although incriminating, do not constitute conclusive proof of guilt.  In any event, even assuming, arguendo, that the proof of guilt is overwhelming, we cannot conclude that there is no significant probability that the verdict would have been different if the jury had not learned that defendant had threatened to kill the victim.  We therefore reverse the judgment and grant a new trial.

We have reviewed defendant's remaining contention and conclude that it lacks merit.

Entered:  June 10, 2016                      Frances E. Cafarell
                                             Clerk of the Court