Appeal by the defendant from a judgment of the Supreme Court, Kings County (Del Giudice, J.), rendered December 4, 2014, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence. Ordered that the judgment is reversed, on the law, and a new trial is ordered. Initially, contrary to the defendant’s contention, the Supreme Court providently exercised its discretion in refusing to accept the defendant’s offer to plead guilty to attempted assault in the first degree as a lesser-included offense of assault in the first degree, charged under count three of the indictment, in full satisfaction of the indictment (see CPL 220.10 [4] [a], [b]; People v Shervington, 25 AD3d 628, 629 [2006]; People v Washington, 229 AD2d 726, 727 [1996]). However, we agree with the defendant that a new trial is required because of certain errors committed by the Supreme Court during the course of the trial. At trial, Willie Dash (hereinafter Willie) testified that he and his nephew Anthony Dash (hereinafter Anthony) were standing in a park within the Cooper Park Houses in Brooklyn with an individual nicknamed “Hash” when Richie Vargas (hereinafter Richie) and an unidentified man wearing a blue hoodie approached the group. Willie, whose back was turned as the men approached, overheard an argument between the men and Anthony. When Willie turned around, Richie was punching Anthony. Willie had not seen who had started the fight. Willie testified that as Richie was punching Anthony, the man in the blue hoodie stabbed Anthony in the leg with a long kitchen knife. Anthony later died as a result of a leg wound. A low-quality surveillance video was entered into evidence. The video depicts two individuals, one of whom is wearing a dark hoodie, approach a group of four people and begin fighting with them. At one point, it appears that the man wearing a dark hoodie moves his hand forward several times towards a person who had fallen to the ground. Jose Lopez testified that he had known Richie and the defendant from the neighborhood. On the evening in question, he was hanging out in front of the Cooper Park Houses with Anthony, Anthony’s uncle, and somebody else, when Richie and the defendant approached them. It appeared to Lopez that the defendant was reaching for a gun, so Lopez ran away. However, Lopez was able to see Richie and the defendant beating up Anthony. When Lopez was asked whether he was able to see the defendant’s hands, Lopez said that he could not because he was running away. After Lopez provided this same answer for a second time, the prosecutor requested a sidebar conference. The Supreme Court then held a Sirois hearing (see People v Sirois, 92 AD2d 618 [1983]) outside the presence of the jury. At the hearing, Lopez acknowledged that before the grand jury, he had truthfully testified that he had seen the defendant swinging at Anthony with a long kitchen knife. However, approximately two weeks prior to his trial testimony, an unidentified man whom Lopez knew from the neighborhood approached Lopez outside of the Cooper Park Houses. The man told Lopez that he had just run into Richie at Rikers Island, and that Richie told the man that he had seen Lopez’s name on some paperwork. The man told Lopez that Richie had told him to approach Lopez and tell him not to come to court or else he would get “fucked up” and would receive stitches. The man did not mention the defendant or give any indication as to what relation the defendant had to the case. Lopez was frightened by the man’s warning, and only testified after being arrested and brought to court pursuant to a material witness order. At the conclusion of the hearing, the court ruled that it would allow the People to present evidence that Lopez had been threatened and had been brought to court pursuant to a material witness order because he had been afraid to testify. The court further ruled that it would allow the People to use Lopez’s grand jury testimony to explain to the jury “why this witness changed his testimony from the grand jury to the trial.” The trial then continued, and Lopez reiterated his testimony from the Sirois hearing that someone had approached him on behalf of Richie and threatened him in an attempt to prevent him from testifying. After Lopez’s grand jury testimony was entered into evidence, Lopez further testified that during the fight, he observed the defendant reach into his waistband and pull out a knife that was approximately six inches long. At the conclusion of Lopez’s testimony, the People read his grand jury testimony to the jury. The defendant later testified on his own behalf, stating that he stabbed Anthony with a four-inch kitchen knife that he had been carrying in his pocket in self-defense after Anthony pulled out a sharp silver object during the fight. At the conclusion of the trial, the jury found the defendant guilty of manslaughter in the first degree. A defendant “has a federal constitutional right to confront the witnesses against him [or her]. As a general rule, the Grand Jury testimony of an unavailable witness is inadmissible] as evidence-in-chief. However, a limited exception to this prohibition, and to the prohibition against the admission of hearsay, applies where the People establish by clear and convincing evidence that the witness’s unavailability was procured by misconduct on the part of the defendant. Where the People establish that a witness is unwilling to testify due to the defendant’s own conduct, or by the actions of others with the defendant’s knowing acquiescence, defendant forfeits the right to confrontation, and such out-of-court statements are admissible” (People v Dubarry, 25 NY3d 161, 174 [2015] [citations and internal quotation marks omitted]; see People v Maher, 89 NY2d 456, 461 [1997]; People v Geraci, 85 NY2d 359, 366 [1995]). Here, the People failed to establish, by clear and convincing evidence, that Lopez had been made unavailable due to threats made at the initiative or acquiescence of the defendant (see People v Dubarry, 25 NY3d at 175-177; People v Steward, 54 AD3d 880, 882 [2008]). Accordingly, the Supreme Court violated the defendant’s right to confrontation by allowing Lopez’s grand jury testimony into evidence. The Supreme Court also erred in allowing Lopez to testify at the trial that he had been threatened by a third party. Evidence that a third party threatened a witness with respect to testifying at a criminal trial is admissible as evidence of consciousness of guilt where there is “ ‘at least circumstantial evidence linking the defendant to the threat’ ” (People v Viera, 133 AD3d 622, 624 [2015], quoting People v Myrick, 31 AD3d 668, 669 [2006]). Here, there was no evidence linking the defendant to the threat. Contrary to the conclusion of our dissenting colleagues, we conclude that these errors cannot be deemed harmless. A constitutional error, such as the improper admission into evidence of Lopez’s grand jury testimony, may not be deemed harmless unless the proof of the defendant’s guilt, without reference to the error, is overwhelming, and there is no reasonable possibility that the error might have contributed to the defendant’s conviction (see People v Crimmins, 36 NY2d 230, 237 [1975]). A nonconstitutional error, such as the improper admission into evidence of the threat made to Lopez, may only be deemed harmless if the proof of the defendant’s guilt, without reference to the error, is overwhelming, and there is no significant probability that the jury would have acquitted the defendant if it had not been for the error (see id. at 242). Here, even assuming that the evidence of the defendant’s guilt was overwhelming, we conclude that there is a reasonable possibility that the erroneous introduction of the grand jury testimony contributed to the defendant’s conviction. Willie did not identify the individual who was wielding the knife, and the faces and hands of the perpetrators were not visible in the surveillance footage. Further, prior to the erroneous admission of the grand jury testimony, Lopez testified that he did not see anything in the defendant’s hands. Only after the erroneous admission of his grand jury testimony did Lopez testify consistently with his grand jury testimony that he observed the defendant wielding a knife. Importantly, during jury deliberations, the jury specifically requested to review the erroneously admitted grand jury testimony (see People v Rivera, 25 NY3d 256, 265 [2015]). While the defendant, as part of a justification defense, admitted during his testimony that he stabbed Anthony with a knife, one could reasonably conclude that he only did so in order to overcome the impact of the erroneously admitted evidence (see People v Levan, 62 NY2d 139, 145 [1984]). Further, we conclude that there is a significant probability that the jury would have acquitted the defendant if it had not been for the Supreme Court’s error in allowing the jury to hear evidence of the threat that Lopez had received prior to his trial testimony. This evidence suggested to the jury that someone associated with the defendant threatened Lopez with physical harm, to the point where he would require stitches, in order to alter his testimony. Such evidence suggested not only that the defendant was conscious of his own guilt, but also predisposed to commit violent acts. The prejudice to the defendant was exacerbated when, during summation, the prosecutor highlighted the threat and the fact that Lopez was so scared of it that he had to be brought to testify “in handcuffs” (see People v Johnson, 80 NY2d 798, 799 [1992]; People v Agina, 103 AD3d 739, 743-744 [2013]). Accordingly, a new trial is warranted. Hall, Duffy and Brathwaite Nelson, JJ., concur.